UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
THE DEVAULT-GRAVES AGENCY, LLC,    :
    :
              Plaintiff,    :
    :
          v.    :      No. 15 Civ. 2178 (STA)
    :
COLLEEN M. SALINGER and MATTHEW R.    :
SALINGER, As Trustees of the J.D. SALINGER    :
LITERARY TRUST,    :
    :
           Defendant.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS</u>

Cynthia S. Arato
Daniel J. O'Neill
SHAPIRO ARATO LLP
500 Fifth Avenue, 40th Floor
New York, New York 10110
Phone: (212) 257-4880
Fax: (212) 202-6417
carato@shapiroarato.com
doneill@shapiroarato.com

*Attorneys for Defendants*

TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ........................................................................................................ 3

    A. The Trustees and the Salinger Stories.............................................................. 3

    B. Plaintiff's Allegations Concerning International Copyright Law....................... 4

    C. The German Judgment....................................................................................... 5

    D. Plaintiff's Allegations About Its Foreign Publishers and Agents..................... 6

    E. Plaintiff's Alternative Declaratory Judgment Claim ........................................ 7

ARGUMENT.............................................................................................................. 7

    POINT I. THE COURT LACKS PERSONAL JURISDICTION
    OVER THE TRUSTEES ........................................................................................ 7

        A. The Court Does Not Have General Jurisdiction Over the Trustees ................. 8

        B. The Court Cannot Exercise Specific Jurisdiction Over the Trustees ............... 9

    POINT II. THE COURT LACKS SUBJECT MATTER JURISDICTION
    OVER PLAINTIFF'S CLAIMS ............................................................................ 10

    POINT III. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM
    FOR A DECLARATORY JUDGMENT REGARDING
    THE BERNE CONVENTION ............................................................................. 10

        A. The Judgment Will Neither Settle the Controversy
        Nor Serve a Useful Purpose............................................................................ 11

        B. The Legal Issues in Dispute Should Be Resolved by Foreign Courts ........... 15

    POINT IV. PLAINTIFF FAILS TO STATE A CLAIM FOR
    TORTIOUS INTERFERENCE WITH CONTRACT .............................................. 16

    POINT V. PLAINTIFF FAILS TO STATE A CLAIM FOR A DECLARATION
    REGARDING THE TRUSTEES' OWNERSHIP.................................................... 20

CONCLUSION......................................................................................................... 20

TABLE OF AUTHORITIES

**Page**

**Cases**

*AmSouth Bank v. Dale*,
    386 F.3d 763 (6th Cir. 2004) ........................................................................ 10, 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 16, 17, 18

*Atlanta Int'l Ins. Co. v. Conwood, Co.*,
    Civ. No. 94-2679-H/A, 1995 WL 861621 (W.D. Tenn. Mar. 30, 1995) ................................. 16

*Bak v. Szumlanski*,
    918 F.2d 178 (6th Cir. 1990) ........................................................................ 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................ 16

*Bolton v. Morgan*,
    No. 05-2315 MA/P, 2006 WL 840422 (W.D. Tenn. Mar. 29, 2006) ...................................... 17

*Bridgeman Art Library, Ltd. v. Corel Corp.*,
    25 F. Supp. 2d 421 (S.D.N.Y. 1998) ................................................................. 10

*Buettgen v. Harless*,
    263 F.R.D. 378 (N.D. Tex. 2009) .................................................................... 15

*Conex Energy-Canada, LLC v. Mann Eng'g, Ltd.*,
    No. CIV 13-4123-KES, 2014 WL 3732571 (D.S.D. July 25, 2014) ...................................... 10

*Crane v. Poetic Prods. Ltd.*,
    593 F. Supp. 2d 585 (S.D.N.Y. 2009) ................................................................ 15

*Crane v. Poetic Prods. Ltd.*,
    351 Fed. App'x 516 (2d Cir. 2009) ............................................................... 15, 16

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) .............................................................................. 8, 9

*East Penn Sanitation, Inc. v. Grinnell Haulers, Inc.*,
    294 N.J. Super. 158 (App. Div. 1996) ............................................................... 18

*Estate of Thomson v. Toyota Motor Corp. Worldwide*,
    545 F.3d 357 (6th Cir. 2008) ......................................................................... 7

*Free Conferencing Corp. v. T-Mobile US, Inc.*,
No. 2:14-cv-07113-ODW, 2014 WL 7404600 (C.D. Cal. Dec. 30, 2014).............................. 10

*Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*,
461 F. Supp. 2d 629 (M.D. Tenn. 2006).................................................................. 18

*Gen. Star Nat. Ins. Co. v. Admin. Asigurarilor de Stat*,
289 F.3d 434 (6th Cir. 2002) .................................................................................. 5

*Giduck v. Niblett*,
Ct. of App. No. 13CA0775, 2014 WL 2986670 (Colo. Ct. of App. July 3, 2014).................. 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
131 S.Ct. 2846 (2011)............................................................................................ 8

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*,
905 F. Supp. 169 (S.D.N.Y. 1995)........................................................................... 15

*Grange Mut. Cas. Co. v. Allen*,
No. 13-1295, 2014 WL 7365809 (W.D. Tenn. Dec. 24, 2014) .............................. 11

*Hartford Fire Ins. Co. v. AutoZone, Inc.*,
312 F. Supp. 2d 1037 (W.D. Tenn. 2004)................................................................ 15

*Hilani v. Greek Orthodox Archdiocese of Am.*,
863 F. Supp. 2d 711 (W.D. Tenn. 2012).................................................................. 7

*Intera Corp. v. Henderson*,
428 F.3d 605 (6th Cir. 2005) ................................................................................. 7

*Int'l Mulch Co. v. Novel Ideas, Inc.*,
No. 4:14CV446 RLW, 2014 WL 6775954 (E.D. Mo. Dec. 2, 2014)...................................... 10

*Keiser Land Co. v. Naifeh*,
No. 1:09-cv-1253, 2010 WL 3220642 (W.D. Tenn. Aug. 13, 2010) ...................................... 11

*Kemp v. Tyson Foods, Inc.*,
No. Civ. 96-173 JRT/RLE, 2001 WL 391552 (D. Minn. Mar. 31, 2001) .............................. 19

*Leadsinger, Inc. v. Cole*,
No. 05 Civ. 5606 (HBP), 2006 WL 2320544 (S.D.N.Y. Aug. 10, 2006)................................ 17

*Marshall Motor Homes Int'l, Inc. v. Newmar Corp.*,
No. 3:01-CV-397, 2003 WL 23333579 (E.D. Tenn. Dec. 5, 2003) ................................... 18, 19

*Montgomery Cnty. Ass'n of Realtors v. Realty Photo Master Corp.*,
    878 F. Supp. 804 (D. Md. 1995) ........................................................................... 19

*Patterson v. Novartis Pharm. Corp.*,
    451 F. App'x 495 (6th Cir. 2011) ........................................................................ 17

*P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*,
    232 F. Supp. 2d 220 (S.D.N.Y. 2002) ................................................................. 19

*Polk & Sullivan, Inc. v. United Cities Gas Co.*,
    783 S.W.2d 538 (Tenn. 1989) .............................................................................. 18

*Reich v. Lopez*,
    38 F. Supp. 3d 436 (S.D.N.Y. 2014) ..................................................................... 8

*Rhodes Enters., LLC v. Fin. Carrier Servs., Inc.*,
    No. 3-14-1723, 2014 WL 7010952 (M.D. Tenn. Dec. 11, 2014) ........................ 8, 9

*Riggs v. Royal Beauty Supply, Inc.*,
    879 S.W.2d 848 (Tenn. Ct. App. 1994) .............................................................. 19

*Salinger v. Piper Verlag GmbH*,
    Ref. No. 15 0 62/15, Regional Court of Berlin, Germany (Mar. 31, 2015) ...................... *passim*

*Scottsdale Ins. Co. v. Roumph*,
    211 F.3d 964 (6th Cir. 2000) ......................................................................... 11, 16

*Sherman v. Saxon Mortg. Servs., Inc.*,
    No. Civ. 10-2282-STA-TMP, 2010 WL 2465459 (W.D. Tenn. June 14, 2010) ..................... 10

*Silverstein v. Penguin Putnam, Inc.*,
    368 F.3d 77 (2d Cir. 2004) ..................................................................................... 4

*Smith v. Rosenthal Collins Group, LLC*,
    No. 03-2360 M1/AN, 2005 WL 2210208 (W.D. Tenn. Sept. 10, 2005) ................................ 18

*Tendeka, Inc. v. Glover*,
    No. Civ. A. H-13-1764, 2014 WL 978308 (S.D. Tex. Mar. 12, 2014) .................................. 10

*Thompson v. Bank of Am., N.A.*,
    773 F.3d 741 (6th Cir. 2014) ............................................................................... 17

*Toledo v. Jackson*,
    485 F.3d 836 (6th Cir. 2007) ............................................................................... 10

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) ................................................................. 8, 9, 10

*Warner Bros. Entm't Italia s.p.a. v. Passwordl s.r.l et al.*,
   Court of First Instance of Milan, Italy (Feb. 6, 2013). .......................... 12, 13, 14, 15

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) ........................................................................ 11

*Winfree v. Educators Credit Union*,
   900 S.W.2d 285 (Tenn. Ct. App. 1995) ........................................... 17, 18

*Wix v. Walker*,
   No. 2080079, 2008 WL 3926393 (M.D. Tenn. Aug. 27, 2008) ................... 10

## Statutes, Treaties and Rules

17 U.S.C. § 104A(h)(6)(c)(i) ........................................................... 12

17 U.S.C. § 204(a) ......................................................................... 20

17 U.S.C. § 205(a) ......................................................................... 20

28 U.S.C. § 1331 ........................................................................... 10

28 U.S.C. § 1332(a) ....................................................................... 10

Berne Convention for the Protection of Literary and Artistic Works .................................. *passim*

Fed. R. Civ. P. 12(b)(1) ................................................................. 1, 10

Fed. R. Civ. P. 12(b)(2) ................................................................. 1, 7

Fed. R. Civ. P. 12(b)(6) ..................................................................... 1

Fed. R. Civ. P. 44.1 .......................................................................... 5

Tenn. Code Ann. § 47-50-109 ........................................................ 17

## Other Authorities

Lisa M. Brownlee, *Recent Changes in the Duration of Copyright in
   the United States and European Union: Procedure and Policy*,
   6 FORDHAM INTELL. PROP. MEDIA & ENT. L.J. 579 (1996) ..................... 12

Orrin G. Hatch, *Better Late Than Never: Implementation of the 1886 Berne Convention*,
22 CORNELL INT'L L.J. 171 (1989) ........................................................................ 12

World Intellectual Property Organization, *Guide to the Berne Convention for the
Protection of Literary and Artistic Works (Paris Act 1971)* (1978) ......................... 12

Defendants Colleen M. Salinger and Matthew R. Salinger, sued as Trustees of the J.D. Salinger Literary Trust (the "Trustees"), by their undersigned attorneys, respectfully submit this Memorandum of Law in support of their motion to dismiss the Complaint pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This case concerns three short stories by the late American author, J.D. Salinger, that were originally published in the 1940s (the "Salinger Stories").  Last year, in an apparent effort to capitalize on recent interest in the author, Plaintiff the Devault-Graves Agency, LLC packaged and began selling the three stories in the United States under the title *Three Early Stories*. Plaintiff has no connection to either J.D. Salinger or his literary works.  Rather, it was able to publish its "collection" in the United States because the Salinger Stories are in the public domain under U.S. copyright law.  This case, accordingly, is not about Plaintiff's domestic distribution of its work, which the Trustees do not contest.  Rather, this case concerns Plaintiff's efforts to distribute *Three Early Stories* in other countries "throughout the world," where entirely different rules apply.

Although Plaintiff has embarked on an ambitious plan to exploit *Three Early Stories* throughout the world, Plaintiff does not claim to have researched the legal status of the Salinger Stories in any country other than the United States.  Instead, it relies blindly on one narrow part of one international copyright treaty – the so-called "Rule of the Shorter Term" of the Berne Convention – which it claims requires that foreign countries deem the Salinger Stories to be in the public domain in their countries too, simply because the works are in the public domain here. And it asks this Court to issue a sweeping, one-size-fits-all declaration with respect to these foreign laws and to issue a judgment that it is entitled to exploit *Three Early Stories* in any and all foreign countries that have signed Berne and follow the Rule.

The world is not so simple.  Currently, 168 countries have signed on to Berne, and an individualized inquiry into the laws of each of those countries would be needed to answer the question that Plaintiff asks this Court to determine in one fell swoop – for the entire world. Contrary to Plaintiff's suggestion that this Court need only determine whether a country is a Berne signatory and has adopted the Rule of the Shorter Term, in order to determine the rights to the Salinger Stories in any one of those countries, one must examine, at a minimum, (1) the terms of other treaties between that country and the United States; (2) that country's own copyright laws; and (3) the country's interpretation of Berne, including the Rule of the Shorter Term.  To properly determine the parties' rights in each potentially relevant country would be extraordinarily complex.  Accordingly, these issues are best left to foreign courts, particularly since the narrow declaratory judgment that Plaintiff seeks would leave the parties' respective rights still unresolved.

Plaintiff's shoot first, aim later approach is best illustrated by their recent efforts to exploit *Three Early Stories* in Germany.  Plaintiff purported to license this work to a German publisher and refused to halt that exploitation even after the Trustees initiated legal proceedings in papers that explained why the publication infringed the Trustees' rights in Germany irrespective of what Plaintiff could do with the work in the United States.  On March 31, 2015, the Regional Court of Berlin enjoined the publication in a ruling that firmly established that the Salinger Stories remain protected in Germany, regardless of their public domain status here, and properly questioned how Plaintiff "could have trustworthily assessed and reliably clarified the complex copyright situation in Germany."  This ruling, even standing alone, belies Plaintiff's contention that Defendants "have objected" to the "international publication" of *Three Early Stories* "without any legal basis."

Plaintiff's action is critically flawed in other respects as well.  As a threshold matter, this Court lacks jurisdiction over each of the Trustees; they have no ties to Tennessee, and the only connection this action has to Tennessee is that it is Plaintiff's home, which is not sufficient to confer jurisdiction over Defendants.  Plaintiff has also failed to allege this Court's subject matter jurisdiction.  Further, Plaintiff's claim for tortious interference with contract must be dismissed because Plaintiff does not adequately allege (a) the existence of any contract; (b) an actual breach of any contract; or (c) that the Trustees did anything unlawful.  Finally, Plaintiff seeks a declaration that the Trustees own no rights in the Salinger Stories but does not plausibly allege any basis for its claim.  In fact, J.D. Salinger transferred *all* his intellectual property rights to the Trustees of the J.D. Salinger Literary Trust in a written assignment.

The Court should dismiss Plaintiff's Complaint in its entirety and with prejudice.

## BACKGROUND

### A.  The Trustees and the Salinger Stories

The defendants are the trustees of the J.D. Salinger Literary Trust (the "Trust"), "a trust established by J.D. Salinger and into which J.D. Salinger has transferred certain intellectual property rights."  (Compl. ¶ 6).  At all relevant times, Trustee Colleen Salinger has been a resident of New Hampshire, and Trustee Matthew Salinger has resided in Connecticut.  (Decl. of Colleen M. Salinger, May 19, 2015, ¶ 5; Decl. of Matthew R. Salinger, May 19, 2015, ¶ 6; *see* Compl. ¶ 7).

The Salinger Stories at issue here are:  "The Young Folks," originally published in *Story* magazine in February 1940; "Go See Eddie," originally published in the *University of Kansas City Review* in December 1940; and "Once A Week Won't Kill You," originally published in *Story* magazine in 1944.  (Compl. ¶¶ 12, 14, 18).  Plaintiff alleges that each of these stories

received copyright protection in the U.S. for a term of 28 years after its publication and thereafter fell into the public domain.  (*Id.* ¶¶ 12-13, 16-17, 20-21).

### B.  Plaintiff's Allegations Concerning International Copyright Law

In 2014, Plaintiff packaged the Salinger Stories together, verbatim, in a book titled *Three Early Stories* and began exploiting that work in the United States after confirming that the stories had fallen into the public domain in this country.  (Compl. ¶¶ 23-25).[1]  Plaintiff, however, also began exploiting its work in unspecified countries throughout the world (*id*. at ¶ 37), even though Plaintiff does not claim to have conducted any diligence, before beginning its exploitation, into whether the stories are protected by copyright abroad.  Nonetheless, Plaintiff now seeks a declaration from this Court that Plaintiff "is legally entitled to exploit its copyright for *Three Early Stories* in all countries that have signed the Berne Convention and follow the Rule of the Shorter Term" because "[i]n countries that apply the Rule of the Shorter Term, the [Salinger] Stories are also [allegedly] in the public domain."  (*Id.* ¶¶ 44-47).  According to the Complaint:

> Article 7 of the Berne Convention governs the term length for the copyright
> protection of a work.  Article 7 holds, "In all cases, the term shall be governed by
> legislation of the country where protection is claimed; however, unless the
> legislation of that country otherwise provides, the term shall not exceed the term
> fixed by the country of origin of the work."  Berne Convention, art. 7(8).  This is
> known in copyright law as the Rule of the Shorter Term, which provides that in
> foreign jurisdictions the term of a work's copyright shall not exceed the term of
> the work's copyright in the country of origin.

---

[1] Plaintiff alleges that its "unique compilation is protected by federal copyright law."  (Compl. ¶ 26).  But Plaintiff concedes that it included the Salinger Stories in its publication because they are the only Salinger stories that are in the public domain.  (*Id.* ¶¶ 23-25 & Ex. A).  By its own admission, then, Plaintiff's "compilation" includes no degree of creativity; its principle of selection was merely all-inclusiveness.  Accordingly, Plaintiff can possess no copyright in its supposed selection of these three works.  *See Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 80 & 83 (2d Cir. 2004).  At most, any U.S. copyright Plaintiff could obtain would cover no more than the work's title, cover art and illustrations.

(*Id.* ¶ 46).  Plaintiff's conclusion makes no accommodation for the domestic laws of any foreign country, how they interpret Berne, or any other treaties that might dictate the applicable terms of protection within their borders.

### C.  The German Judgment

In late 2014, the German publisher, Piper Verlag GmbH ("Piper"), announced that it would publish a German translation of *Three Early Stories* in Germany.  (Decl. of Cynthia S. Arato, May 22, 2015, Ex. 1 ("Germ. J.") at 3).  The Trustees sent Piper a cease-and-desist letter in January 2015 and, when Piper disregarded that letter, commenced a legal proceeding against Piper in Germany.  (*Id.* at 4-5).  On March 31, 2015, the Regional Court of Berlin (the "German Court") issued a Judgment in favor of the Trustees (the "German Judgment"), enjoining Piper from reproducing or selling *Three Early Stories* in Germany and ordering Piper to recall any copies that had already been delivered to bookstores.  (*Id.* at 2).[2]

Contrary to Plaintiff's contention that J.D. Salinger did not assign the rights in the works to the Trustees of the Trust, the German Court held that the Trustees own the copyrights to the Salinger Stories based on an all "encompassing assignment of rights" from J.D. Salinger, executed on October 15, 2008.  (*Id.* at 12).

Contrary to the Plaintiff's contention that the Berne Rule of the Shorter Term catapults the Salinger Stories into the public domain, the German Court observed that the Salinger Stories "still enjoy copyright protection" under Berne.  (*Id.* at 11).  The Court held that it need not explain those protections, however, because Berne "gives priority" to an earlier treaty, and the Salinger Stories are protected under that treaty as well.  As the German Court explained:

---

[2] On issues of foreign law, a court "may consider any relevant material or source . . . whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Fed. R. Civ. P. 44.1; *Gen. Star Nat'l Ins. Co. v. Admin. Asigurarilor de Stat*, 289 F.3d 434, 439 (6th Cir. 2002).

> According to Article 1 of the German-American treaty of 1892, which still
> remains in force, the citizens of the USA should in the German Reich enjoy the
> protection of the works of literature against unauthorized reproduction based on
> the same protection to which members of the Reich are also entitled according to
> law.  The US citizens are, according to this, afforded copyright protection in
> Germany according to German law.  *The duration of the protection in Germany is
> also governed exclusively by German law; thus, it does not depend on whether
> and, as the case may be, how long the work in question is still protected in the
> USA*.

(*Id.* at 10 (emphasis added)).  As the German Court concluded, "in Germany the works are still

within the term of copyright protection."  (*Id.* at 11).

The Court, finally, criticized Piper for relying on Plaintiff's questionable assurances

regarding the "complex copyright situation in Germany":

> [Piper] acted unlawfully.  The consent of the author or the [Trustees] has not been
> given to [Piper].  The license by the publisher Devault-Graves Agency might
> relate to potential rights with regard to the new American edition of the book as
> such, but it cannot invalidate the rights of the [Trustees] in the present case.
>
> . . . The responsibility rested on [Piper], to exhaustively assure itself – prior to the
> adaptation, publication and exploitation – with regard to its entitlement.  This is
> all the more, as its own German lawyers in their protective writ regard the legal
> matter as being too complex for a speedy trial, thus as particularly difficult.  In
> such situation, [Piper] has limited itself . . . to trusting in a declaration of its
> licensor.  The Defendant has left open, what could have entitled it to assume that
> the US American publisher could have trustworthily assessed and reliably
> clarified the complex copyright situation in Germany.

(*Id.* at 13-14).

### D.  Plaintiff's Allegations About Its Foreign Publishers and Agents

The Complaint alleges generally that Plaintiff "entered into contracts with various foreign

publishers and agents" (Compl. ¶ 37), and that the Trustees interfered with those contracts by

representing to foreign publishers and literary agents that publication of *Three Early Stories*

abroad violates the Trustees' rights in the Salinger Stories, and by "threaten[ing] legal action."

(*Id.* ¶ 38).  The Complaint, however, is bereft of any details regarding these supposed deals.

Plaintiff does not specify the number of contracts it entered, the agents or publishers with which

it contracted, the dates the contracts were entered into, the countries to which those contracts relate, or the contracts' terms.  Nor does Plaintiff allege any true breach of any contractual obligation.  Rather, Plaintiff alleges, ambiguously, only that "several parties breached *and/or* terminated their contracts with Devault-Graves" (*id.* ¶ 53 (emphasis added)) – a formulation that leaves wide open the possibility that these unidentified parties ended their relationship with Plaintiff in a manner that did not place them in breach.

### E.  Plaintiff's Alternative Declaratory Judgment Claim

Plaintiff also seeks a declaration that the Trust "does not own the copyrights in and to the Underlying Stories."  (Compl. ¶ 48).  Plaintiff alleges no factual basis for this assertion.  Instead, Plaintiff merely concludes, on "information and belief," that J.D. Salinger did not assign these copyrights to the Trustees because the Trust previously recorded one written assignment document with the U.S. Copyright Office which does not cover these works.   (*Id.* ¶¶ 28-31).

### <u>ARGUMENT</u>

### POINT I.
### THE COURT LACKS PERSONAL JURISDICTION OVER THE TRUSTEES

Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(2) because this Court lacks personal jurisdiction over the Trustees.  It is the plaintiff's burden to establish that the Court has personal jurisdiction over all defendants.  *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008).  Where – as here – "the jurisdictional facts are not really in dispute and the parties simply disagree over their significance," a district court may "decid[e] the jurisdictional issue early in the case and without holding an evidentiary hearing." *Hilani v. Greek Orthodox Archdiocese of Am.*, 863 F. Supp. 2d 711, 718 (W.D. Tenn. 2012).

A federal court in Tennessee may exercise personal jurisdiction over a nonresident only to the extent consistent with the Due Process Clause of the United States Constitution.  *Intera*

*Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005).  A court may assert "general" jurisdiction over an out-of-state defendant only when the defendant's "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [him or her] essentially at home in the forum State.'"  *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011)).  To find "specific" jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State."  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).  As a result, "the plaintiff cannot be the only link between the defendant and the forum."  *Id.* at 1122.

### A.  The Court Does Not Have General Jurisdiction Over the Trustees

Plaintiff contends that this Court has general jurisdiction over the Trustees because they "have authorized the publication of the works of J.D. Salinger in the State of Tennessee and have realized significant income from such sales."  (Compl. ¶ 9).  That is incorrect.  J.D. Salinger licensed his works to a publishing company decades ago, and the publisher – and not either of the Trustees – determined where and how to distribute those works.  (*See* C. Salinger Decl. ¶¶ 13-14; M. Salinger Decl. ¶ 16).

In any event, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."  *Daimler*, 134 S. Ct. at 760.  Thus, a Court should find general jurisdiction only when the defendant's "'affiliations with the State are so "continuous and systematic" as to render [him or her] essentially at home in the forum State.'" *Id.* at 761 (quoting *Goodyear*, 131 S.Ct. at 2851); *accord Rhodes Enters., LLC v. Fin. Carrier Servs., Inc.*, No. 3-14-1723, 2014 WL 7010952, at *2 (M.D. Tenn. Dec. 11, 2014).  *See also Reich v. Lopez*, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014) (courts may extend general jurisdiction to non-resident individuals "[o]nly on truly 'exceptional' occasions").  Such affiliations are absent here.  Neither of the Trustees lives in Tennessee, and neither owns property, maintains a

8

place of business, has employees, maintains a bank account, or does any business in or from

Tennessee.  (*See* C. Salinger Decl. ¶¶ 5-12; M. Salinger Decl. ¶¶ 6-15).  Personal jurisdiction,

moreover, "requires something more than a passive benefit from the forum state's opportunities."

*Rhodes*, 2014 WL 7010952, at *3.  Accordingly, even if the Trustees receive income from sales

in this State, that cannot confer this Court's jurisdiction.  If it could, the Trustees would be

subject to jurisdiction in every state in which J.D. Salinger's works are sold.  Yet, the Supreme

Court has rejected "[s]uch exorbitant exercises of all-purpose jurisdiction" and mandates,

instead, that a defendant only be considered "at home" in states with which he or she has a

"unique" relationship.  *See Daimler*, 134 S.Ct. at 760-62; *id.* at 762 n.20 ("A corporation that

operates in many places can scarcely be deemed at home in all of them.").

### B.  The Court Cannot Exercise Specific Jurisdiction Over the Trustees

In the alternative, Plaintiff contends that the Court has specific jurisdiction "because the

acts and events of this dispute relate to intentional acts of interference with contracts between a

Tennessee company and foreign literary agents, contracts which Defendants knew were to be

partially performed in the State of Tennessee."  (Compl. ¶ 9).  Plaintiff's theory of jurisdiction is

foreclosed by the Supreme Court's decision in *Walden*.

In *Walden*, the Court considered whether "a court in Nevada may exercise personal

jurisdiction over a [Georgia] defendant on the basis that he knew his allegedly tortious conduct

in Georgia would delay the return of funds to plaintiffs with connections to Nevada."  134 S. Ct.

at 1119.  Although it was foreseeable that the defendant's conduct would injure the plaintiff in

Nevada, the Court held that insufficient to create jurisdiction over the defendant in Nevada.  *Id.*

at 1125.  Tennessee's only nexus to Plaintiff's claims is that it is Plaintiff's home state.  (*See*

Compl. ¶ 5).  Accordingly, under *Walden*, Plaintiff's allegation that the Trustees interfered with

contracts involving Plaintiff cannot subject the Trustees to specific jurisdiction in the state. *See* 134 S. Ct. at 1122.[3]

## POINT II.
## THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS

Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(1) because this Court lacks federal question jurisdiction. *See* 28 U.S.C. § 1331. A declaratory judgment requires "an independent basis for federal subject matter jurisdiction," *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007) (quotation marks omitted), and Plaintiff's invocation of Berne does not qualify. *See Bridgeman Art Library, Ltd. v. Corel Corp.*, 25 F. Supp. 2d 421, 430 (S.D.N.Y. 1998) (no federal subject matter jurisdiction over claim that defendant violated Berne). This Court does not have diversity jurisdiction because Plaintiff, an LLC, has failed to allege the citizenship of its members or the requisite amount in controversy. *See Bak v. Szumlanski*, 918 F.2d 178 (6th Cir. 1990); *Sherman v. Saxon Mortg. Servs., Inc.*, No. Civ. 10-2282-STA-TMP, 2010 WL 2465459, at *4 (W.D. Tenn. June 14, 2010); *Wix v. Walker*, No. 2:08-cv-0079, 2008 WL 3926393, at *1 (M.D. Tenn. Aug. 27, 2008); *see also* 28 U.S.C. § 1332(a).

## POINT III.
## THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR A DECLARATORY JUDGMENT REGARDING THE BERNE CONVENTION

Even when a district court has subject matter jurisdiction, there is no requirement that the court hear a declaratory judgment claim. *AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir.

---

[3] *See also Tendeka, Inc. v. Glover*, No. Civ. A. H-13-1764, 2014 WL 978308, at *7-8 (S.D. Tex. Mar. 12, 2014) (where alleged interference occurred outside state and only connection to state was that plaintiff was allegedly harmed there, no personal jurisdiction over defendant under *Walden*); *Free Conferencing Corp. v. T-Mobile US, Inc.*, No. 2:14-cv-07113-ODW, 2014 WL 7404600, at *11-12 (C.D. Cal. Dec. 30, 2014) (same); *Int'l Mulch Co. v. Novel Ideas, Inc.*, No. 4:14CV446 RLW, 2014 WL 6775954, at *5 (E.D. Mo. Dec. 2, 2014) (same); *Conex Energy-Canada, LLC v. Mann Eng'g, Ltd.*, No. CIV 13-4123-KES, 2014 WL 3732571, at *5-6 (D.S.D. July 25, 2014) (same); *Giduck v. Niblett*, Ct. of App. No. 13CA0775, 2014 WL 2986670, at *6-8 (Colo. Ct. of App. July 3, 2014).

2004) (noting that the Declaratory Judgment Act is merely "an enabling Act").  Rather,

"'[d]istrict courts possess discretion in determining whether and when to entertain an action

under the Declaratory Judgment Act.'"  *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282

(1995)).  In exercising that discretion, courts consider "(1) whether the judgment would settle the

controversy; (2) whether the declaratory judgment action would serve a useful purpose in

clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely

for the purpose of procedural fencing or to provide an arena for a race for res judicata; (4)

whether the use of a declaratory action would increase the friction between our federal and state

courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative

remedy that is better or more effective."  *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th

Cir. 2000) (quotation marks omitted); *accord Keiser Land Co. v. Naifeh*, No. 1:09-cv-1253, 2010

WL 3220642, at *2 (W.D. Tenn. Aug. 13, 2010).  At least four of these factors dictate that the

Court should dismiss Plaintiff's declaratory judgment claim concerning Berne.

### A.  The Judgment Will Neither Settle the Controversy Nor Serve a Useful Purpose[4]

Plaintiff seeks a general, sweeping declaration that "Devault-Graves is legally entitled to

exploit its copyright for *Three Early Stories* in all countries that have signed the Berne

Convention and follow the Rule of the Shorter Term."  (Compl. ¶ 44).  By its very terms, this

relief presupposes that this Court can determine the parties' rights across a large segment of the

globe simply by reading Berne.  That is incorrect.

As an initial matter, the meaning of Berne and its so-called Rule of the Shorter Term is

far more complex and nuanced than Plaintiff presents.  This is because each Berne signatory

applies its own interpretation of Berne and the Rule of the Shorter Term.  Accordingly, it is

---

[4] "The first two factors are closely related and often considered together."  *Grange Mut. Cas. Co. v. Allen*, No. 13-1295, 2014 WL 7365809, at *3 (W.D. Tenn. Dec. 24, 2014).

inaccurate to contend, as Plaintiff does here, that every country that "follow[s] the Rule of the Shorter Term" would find the Salinger Stories in the public domain.  Indeed, it is impossible to determine how each and every one of the 168 Berne member states might apply the Rule of Shorter Term – or not – to the Salinger Stories simply by reference to the language of Berne, as Plaintiff contends.  Rather, the Court would need to make that determination separately for each country according to varied and complex principles that each country may adopt or not.

In particular, while a country may follow the Rule of The Shorter Term as a general matter, it is far from clear that such country would apply that Rule to the Salinger Stories, which fell into the public domain here solely due to a failure to follow old "formalities" under U.S. copyright law that are now defunct and prohibited under Berne.  As one commentator has explained, "[A] Berne country in which protection exists cannot cease protecting a work because protection has lapsed in the country of origin due to failure to fulfill formalities.  Accordingly, if a work is unprotected in its country of origin due to failure to fulfill copyright formalities, such work must nonetheless be protected in other Berne countries."  Lisa M. Brownlee, Recent Changes in the Duration of Copyright in the United States and European Union: Procedure and Policy, 6 FORDHAM INTELL. PROP. MEDIA & ENT. L.J. 579, 594 (1996).[5]

Both the Italian and German courts follow this approach.  In Italy, this was established by the case of *Warner Bros. Entm't Italia s.p.a. v. Passworld s.r.l.*, Judgment of the Court of First

---

[5]  Berne's prohibition against conditioning copyright protection on the observance of formalities is one of the Convention's most important hallmarks.  As the World Intellectual Property Organization, a leading authority on Berne, has explained, "If protection depends on observing any such formality, it is a breach of the Convention."  WIPO, *Guide to the Berne Convention for the Protection of Literary and Artistic Works (Paris Act, 1971)* 33 (1978); Orrin G. Hatch, *Better Late Than Never: Implementation of the 1886 Berne Convention*, 22 CORNELL INT'L L.J. 171, 192 (1989) (Berne "prohibits signatories from creating 'formalities' which might pose obstacles for the 'enjoyment or exercise' of rights of authors seeking copyright protection."); *see also* 17 U.S.C. § 104A(h)(6)(c)(i) (restoring foreign works that were in the public domain due to failure to comply with renewal "formality" under U.S. law).

Instance of Milan, Feb. 6, 2013, *Annali italiani di diritto d'autore, della culture e dello spettacolo* (2013), 901 (Arato Decl. Ex. 2).  The *Warner Bros.* case concerned U.S. works that were governed by the 1909 Copyright Act.  Those works were not registered for renewal after their initial 28-year term and thus fell into the public domain in the U.S. once that initial term ended.  *Id.* at 904.  Nevertheless, the Milan Court held that:

> [C]opyright protection is not bound by compliance with the particular formalities or the existence or not of protection in the work's country of origin, with importance only being given to the legislation in the country in which protection is requested.  Therefore, stating that, with respect to the inspiring rationale of the principles set out in the Berne Convention, *falling into the public domain in the country of origin of the work due to the failure to comply with mere formalities (as in this case) cannot represent an obstacle to the application of protection under the Convention* (all the more so now that American regulations have increased the term of protection for the rights in question to 95 years after the death of the author).  In other words: if in the country of origin a work has actually fallen into the public domain due only to the fact that the formalities of renewal required by current national law at the time and then abolished were not fulfilled, such that, in the lack of such formality (and of such noncompliance) the work would still be susceptible to having protection, with the term of protection (subsequently) specified by national legislation not having expired, *the work would not fall into the public domain under the Berne Convention* . . . .

*Id.* at 910-11 (emphasis added).

Just as in *Warner Bros.*, Plaintiff alleges that each of the Salinger Stories enjoyed a term of protection for 28 years and then fell into the public domain in the U.S. due to a failure to register the works and/or renew their initial terms.  (Compl. ¶¶ 12-13, 15-16, 19-20).  *Warner Bros.* thus dictates that the Trustees would continue to hold the exclusive rights to the works in Italy, and will continue to do so until 70 years after J.D. Salinger's death (*i.e.*, 2080).  The law of Germany is the same.  *See* Germ. J. at 11.

In any event, Plaintiff's requested judgment ignores that, in addition to any protection under Berne, the Trustees also have rights in the Salinger Stories in foreign countries through other treaties with the U.S. or under those countries' own copyright laws.  As the German

Judgment illustrates, a foreign jurisdiction will recognize and protect the Trustees' exclusive rights in the stories if those rights are conferred under *any* treaty between that country and the U.S.  Indeed, Berne expressly states that it does not supplant or foreclose any pre-existing or subsequent bilateral treaties between its members "in so far as such agreements grant to authors more extensive rights than those granted by the Convention, or contain other provisions not contrary to this Convention."  Art. 20.  Even Berne's "Rule of the Shorter Term" – the basis for Plaintiff's claim – permits signatories to provide a longer term than exists in the country of origin; it does not mandate that all signatories adhere to the shorter term:  "In any case, the term shall be governed by the legislation of the country where protection is claimed; however, *unless the legislation of that country otherwise provides*, the term shall not exceed the term fixed in the country of origin of the work."  Art. 7(8).  Thus, the German Court upheld the Trustees' exclusive copyrights in Germany under the 1892 treaty between Germany and the U.S.  Germ. J. at 10.  Italy has a similar treaty affording American citizens the same protections as Italian citizens – *i.e.*, life of the author plus 70 years.  *See Warner Bros.*, at 909-10.

*Warner Bros.* also recognized yet another reason that works may be protected throughout Europe even if they are in the public domain in the U.S.  According to the Court, as long as a work is protected in one member of the European Union, the work is entitled to "uniform protection in the *entire European Union*" pursuant to a 2006 Directive.  *Id.* at 912 (emphasis added).  Thus, because the works at issue in that case had been protected in Germany since 1990, they enjoyed that same term of protection in Italy.  *Id.*  Likewise here, the German Court's Judgment that the Trustees own the exclusive rights to the Salinger Stories in Germany until 2080 means that the Trustees are entitled to that same term of protection throughout the EU.

Plaintiff does not specify which of Berne's 168 signatories "follow the Rule of the Shorter Term." (Compl. ¶ 44). As the two examples of Germany and Italy indicate, however, to properly determine the Trustees' and Plaintiff's respective rights in any country (at least outside the European Union, given the German Judgment), one would need to examine that country's treaties and internal legislation. Simply determining that a country follows the Berne Rule of the Shorter Term does not end the inquiry. Germ. J. at 10-11. Yet Plaintiff's requested declaration focuses only on Berne and stops well short of the far more extensive legal analysis required to settle the parties' dispute. For this reason, this Court should decline to hear Plaintiff's claim. *See Hartford Fire Ins. Co. v. AutoZone, Inc.*, 312 F. Supp. 2d 1037, 1041 (W.D. Tenn. 2004) (dismissing declaratory judgment claim because it left issues to be litigated in another court).[6]

## B. The Legal Issues in Dispute Should Be Resolved by Foreign Courts

Courts have cautioned that a district court must exercise its discretion to award declaratory judgments "with great care when foreign law and actions are involved." *Crane v. Poetic Prods. Ltd.*, 593 F. Supp. 2d 585, 598 (S.D.N.Y.), *aff'd*, 351 Fed. App'x 516 (2d Cir. 2009). If this Court were to embark on assessing every Berne signatory's interpretation of Berne to determine how that country might apply the Rule of the Shorter Term, it will create the potential for a judgment that is inconsistent with the decisions of those countries' own courts. While this Court is capable of applying foreign law, there is no compulsion for it do so here, and

---

[6] It is also far from certain that each of those countries' courts would honor a declaratory judgment by this Court. *See Crane v. Poetic Products Ltd.*, 351 F. App'x 516, 518 (2d Cir. 2009) ("[T]he courts of one sovereign are not strictly bound to honor judgments of the courts of another."); *Buettgen v. Harless*, 263 F.R.D. 378, 382 (N.D. Tex. 2009) (noting that a U.S. court judgment may not be binding in Switzerland); *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169, 179 (S.D.N.Y. 1995) ("[N]either Switzerland nor Germany recognizes the doctrine of collateral estoppel and thus would not recognize a judgment rendered by an American court."). Accordingly, Plaintiff's requested relief may – as a practical matter – have no effect, and could needlessly waste both the Court's and the parties' resources, another reason this Court should decline to hear this dispute.

foreign courts are just as capable, if not more so, at applying their own countries' laws. To avoid "increase[ing] the friction" between this Court and other courts, the Court should dismiss Plaintiff's claim. *See*, *e.g.*, *Crane*, 351 F. App'x at 518 (proper for court to cite "international comity" as a ground for dismissing declaratory judgment claim); *Atlanta Int'l Ins. Co. v. Conwood, Co.*, Civ. No. 94-2679-H/A, 1995 WL 861621, at *4 (W.D. Tenn. Mar. 30, 1995) (dismissing declaratory judgment claim regarding Tennessee law because "a decision by this Court could create a potential conflict with a Tennessee court").[7]

### POINT IV.
### PLAINTIFF FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT

Plaintiff fails to state a claim for tortious interference with contract. It fails to adequately allege that Plaintiff had a contract; that any third party breached such a contract; or that the Trustees acted tortiously.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Merely pleading facts that are consistent with a defendant's liability or that permit the court to infer misconduct is insufficient. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

---

[7] Notably, Plaintiff brought this action only after the Trustees had initiated legal proceedings in Germany and had sent a formal cease and desist letter to Plaintiff's sub-publisher in Italy. This timing suggests strongly that Plaintiff is seeking to obtain an omnibus ruling from this Court "for the purpose of procedural fencing or to provide an arena for a race for res judicata," which also weighs in favor of dismissal. *Scottsdale*, 211 F.3d at 968.

To state a claim for tortious interference with contract under Tennessee common law or Tenn. Code Ann. § 47-50-109, a plaintiff must allege that "(1) a legal contract existed; (2) defendant was aware of the contract; (3) defendant intended to induce a contractual breach; (4) defendant acted with malice; (5) the contract was breached; (6) the breach was a proximate result of defendant's conduct; and (7) plaintiff was injured by the breach." *Bolton v. Morgan*, No. 05-2315 MA/P, 2006 WL 840422, at *2 (W.D. Tenn. Mar. 29, 2006).[8]

Plaintiff fails to allege the first element of its claim – establishing an actionable contract – because Plaintiff does not allege any specific contracts, contractual terms or even the parties involved. *See Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 754 (6th Cir. 2014) (dismissing claim because plaintiff "merely assert[ed] that a contract exists" but did not adequately identify the supposed contract). *See also Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606 (HBP), 2006 WL 2320544, at *12 (S.D.N.Y. Aug. 10, 2006) (dismissing claim because, among other things, plaintiff failed to allege "the relevant terms of the contracts").

Plaintiff also fails to allege that the supposed contracts were actually breached. *See Winfree v. Educators Credit Union*, 900 S.W.2d 285, 290 (Tenn. Ct. App. 1995) ("A fundamental requirement in sustaining an action for procurement of the breach of a contract is an actual breach."). Instead, Plaintiff attempts to evade that element by alleging that "several parties breached *and/or terminated their contracts* with Devault-Graves." (Compl. ¶ 53 (emphasis added)). Plaintiff's use of "and/or" fails *Iqbal*'s plausibility standard because it allows the possibility that Plaintiff's supposed counterparties only terminated – and did not breach – their contracts. *See Patterson v. Novartis Pharm. Corp.*, 451 F. App'x 495, 497 (6th Cir. 2011)

---

[8] For purposes of this motion, we assume that Tennessee law applies to Plaintiff's claim.

(plaintiff failed to state a claim under *Iqbal* by alleging two events connected by "and/or," which made it "entirely plausible" that only the second, non-actionable event occurred).

The distinction is critical, and fatal to Plaintiff's claim.  As Plaintiff's competitor in the distribution of J.D. Salinger's works, the Trustees cannot be liable under tortious interference with contract for allegedly causing a third party to legally terminate a contract.  *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 637 (M.D. Tenn. 2006) (where plaintiffs "acknowledge[d] that this contract was terminated in accordance with its own terms, not breached . . . [defendant's] interference with that arrangement cannot give rise to a claim for inducement of breach of contract"); *Smith v. Rosenthal Collins Group, LLC*, No. 03-2360 M1/AN, 2005 WL 2210208, at *10 (W.D. Tenn. Sept. 10, 2005) (dismissing tortious interference with contract claim based on alleged interference with an at-will contract); *Polk & Sullivan, Inc. v. United Cities Gas Co.*, 783 S.W.2d 538, 543-44 (Tenn. 1989) (claim properly dismissed because it was based on the termination of a contract terminable at will); *Winfree*, 900 S.W.2d at 290 (same).  Plaintiff's "and/or" pleading tactic thus requires dismissal of its claim.

Finally, even if Plaintiff had adequately alleged the existence and actual breach of a contract, Plaintiff still fails to allege that the Trustees did anything actionable.  There is no liability for tortious interference with contract unless the Trustees acted with "malice" – that is, in "willful violation of a known right."  *Marshall Motor Homes Int'l, Inc. v. Newmar Corp.*, No. 3:01-CV-397, 2003 WL 23333579, at *30 (E.D. Tenn. Dec. 5, 2003).  Malice does not exist, however, when a defendant notifies a third party of its belief that the plaintiff lacks the legal authority to grant the rights it purported to grant in its contract with that third party.  *See id.* (defendant acted without malice in informing plaintiff's contractual counterparty that plaintiff "lacked the authority to grant exclusive dealership rights" to a vehicle).  *See also East Penn*

*Sanitation, Inc. v. Grinnell Haulers, Inc.*, 294 N.J. Super. 158, 181 (App. Div. 1996) (no malice where defendant merely communicated its opinion regarding plaintiff's legal inability to perform a contract).  And even if a defendant communicates to a third party its legal view that the plaintiff was violating its rights, the defendant does not act maliciously as long as the defendant "would have been justified in litigating the question."  *Riggs v. Royal Beauty Supply, Inc.*, 879 S.W.2d 848, 852 (Tenn. Ct. App. 1994).

Under these standards, the Trustees' alleged communications with Plaintiff's foreign agents and publisher cannot, as a matter of law, have been with malice.  Plaintiff alleges that the Trustees "have contacted foreign publishers and literary agents by letter and email asserting that publication of *Three Early Stories* violates Defendants' purported foreign copyrights in the [Salinger] Stories," and that the Trustees "threatened legal action."  (Compl. ¶ 38).  As the examples that Plaintiff attached to its Complaint make clear, the Trustees at best communicated to select others an overall legal position, and invited them to provide a legal basis why the publication of the *Three Early Stories* overseas would not violate the Trustees' rights in any applicable territory.  (Compl. Exs. E & F).  Such communications were justified, as the analyses under German and Italian law demonstrate, and courts regularly uphold the rights of parties to protect their potential intellectual property rights in this manner, even if they are ultimately mistaken.  *See*, *e.g.*, *P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 232 F. Supp. 2d 220, 225 (S.D.N.Y. 2002) (cease-and-desist letters asserting infringement not actionable as tortious interference with contract); *Kemp v. Tyson Foods, Inc.*, No. Civ. 96-173 JRT/RLE, 2001 WL 391552, at *7 (D. Minn. Mar. 31, 2001) (same); *Montgomery Cnty. Ass'n of Realtors v. Realty Photo Master Corp.*, 878 F. Supp. 804, 818 (D. Md. 1995) (same).

**POINT V.**
**PLAINTIFF FAILS TO STATE A CLAIM FOR A DECLARATION REGARDING**
**THE TRUSTEES' OWNERSHIP**

Plaintiff fails to support its alternative request for a declaration that "the Trust does not own the copyrights in and to the Underlying Stories," (Compl. ¶ 48), because it fails to allege any plausible basis to question the Trustees' ownership.  Plaintiff premises its request on the fact that J.D. Salinger recorded only one assignment with the U.S. Copyright Office and that assignment does not cover the Salinger Stories but instead deals with other works.  (*See* Compl. ¶¶ 28-30).  That is evidence of nothing.  The act of recording an assignment document is purely voluntary and is not needed to validate a pre-existing assignment.  *See* 17 U.S.C. § 204(a) (only requirement for a valid assignment is that it be in writing); *id.* § 205(a) ("Any transfer of copyright ownership . . . may be recorded in the Copyright Office . . . .").  Plaintiff provides no legitimate basis for its conclusory allegation that such assignment does not exist simply because it was not recorded.  (*See* Compl. ¶ 31).  Indeed, as the German Court recognized, J.D. Salinger conveyed his rights in the Salinger Stories to the Trustees in a valid written document – just not the one he previously chose to record.  *See* Germ. J. at 12 (recognizing validity of J.D. Salinger's assignment of rights to the Salinger Stories).  Because Plaintiff's "alternative" claim is both implausible and meritless, it should be dismissed.

**CONCLUSION**

For the foregoing reasons, the Trustees respectfully request that the Court dismiss the Complaint in its entirety and with prejudice.

Dated:  New York, New York
        May 22, 2015

Respectfully submitted,

SHAPIRO ARATO LLP


By:    s/ Cynthia S. Arato
        Cynthia S. Arato (admitted *pro hac vice*)
        Daniel J. O'Neill (admitted *pro hac vice*)
500 Fifth Avenue, 40th Floor
New York, New York 10110
Telephone:  (212) 257-4880
Facsimile:  (212) 202-6417
carato@shapiroarato.com
doneill@shapiroarato.com

*Attorneys for Defendants*