IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **DEVAULT-GRAVES AGENCY, LLC,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | Case No. 2:15-cv-02178-STA-tmp |
| v. ) | |
| ) | |
| **COLLEEN M. SALINGER,** ) | |
| As Trustee of the J.D. Salinger ) | |
| Literary Trust, et al., ) | |
| ) | |
|     **Defendants.** ) | |

**ORDER PARTIALLY GRANTING AND PARTIALLY DENYING
DEFENDANT'S MOTION TO DISMISS
AND
TRANSFERRING THE CASE TO THE DISTRICT COURT OF NEW HAMPSHIRE
PURUSANT TO 28 U.S.C. § 1406**

Plaintiff Devault-Graves Agency, LLC, a publishing company located in Memphis, Tennessee, has filed suit against Defendants Colleen M. Salinger and Matthew R. Salinger in their capacities as Trustees (the "Trustees") of the J.D. Salinger Literary Trust ("the Trust"). Plaintiff seeks a declaratory judgment that it may publish a collection of three short stories written by the late J. D. Salinger in the foreign countries that are signatories to the Berne Convention.[1]  (Amd. Cmplt., ECF No. 27.)   Plaintiff has also alleged a claim of tortious

---

[1] Under the Berne Convention, an author is entitled to claim national treatment in all signatory countries other than the country of origin; however, if the country of origin of the foreign work grants a lesser term of protection than the country where protection is claimed, only that shorter term will be available for the author. *See Berne Convention for the Protection of Literary and Artistic Works* (Sept. 9, 1886), as amended by the Paris Additional Act and Declaration (1896), the Berlin Convention (1908), the Bern Additional Protocol (1914), the Rome Convention (1928), the Brussels Convention (1948), the Stockholm Convention (1967), and the Paris Convention (1971), 331 UNTS 217, TS No. 4757 (1948 text) (protecting in member countries

interference with contracts and business relationships.  This matter is now before the Court on Defendant Trustees' motion to dismiss. (ECF No. 15.)  Plaintiff has responded to the motion (ECF No. 17), and Defendants have filed a reply to the response. (ECF No. 19.)  For the reasons set forth below, the Court finds that it lacks personal jurisdiction over Defendant Trustees, and the motion to dismiss is **GRANTED** on this ground.  The Court hereby **TRANSFERS** the case to the United States District Court for the District of New Hampshire. The motion to dismiss is **DENIED** without prejudice on all other grounds, in light of the transfer.

Defendants have presented five arguments in their motion to dismiss: (1) the Court lacks personal jurisdiction over Defendants; (2) the Court lacks subject matter jurisdiction; (3) the Court should decline to hear Plaintiff's declaratory action; (4) Plaintiff has failed to adequately plead a tortious interference claim; and (5) Plaintiff has failed to state a claim regarding Defendants' ownership of the copyrights at issue. (Mot. Dismiss pp. 1-2, ECF No. 15.)  Because the court finds that it does not have personal jurisdiction over Defendants, there is no need to address Defendants' other arguments.  However, the Court notes that Plaintiff's amended complaint (ECF No. 27) has corrected any deficiencies in the original complaint as to subject matter jurisdiction under 28 U.S.C. § 1332. The amended complaint pleads both the required diversity of citizenship and the requisite amount in controversy. (Amd. Cmplt. ¶ 9, ECF No. 27.)

The facts as they relate to Defendants' lack of personal jurisdiction argument are as follows: Defendants are the trustees of the J.D. Salinger Literary Trust, "a trust established by J.D. Salinger and into which J.D. Salinger has transferred certain intellectual property rights." (*Id.* ¶ 6.)  At all relevant times, Trustee Colleen Salinger has been a resident of New Hampshire;

---

literary and artistic works to include works within the literary, scientific, and artistic domain); and the Buenos Aires Convention, 38 Stat. 1785 (1910); 17 U.S.C. § 101 (recognizing the United States' adherence to provisions of the Berne Convention of 1886).

2

Trustee Matthew Salinger resided in California for sixteen years and has been a resident of Connecticut since 1999. (Decl. of C.M. Salinger, ¶ 5, ECF No. 15-2; Decl. of M.R. Salinger, ¶ 6, ECF No. 15-3; Amd. Cmplt. ¶¶ 7-8, ECF No. 27.)  The works of J.D. Salinger are distributed in the state of Tennessee, specifically by Ingram Content Group, which is based in La Vergne, Tennessee, and Defendants have received income from those sales. (Amd. Cmplt. ¶ 10, ECF No. 27.)  Ingram is a customer of the publisher of Salinger's works and has no direct contact with Defendant Trustees. (M. Salinger Supp. Decl. ¶ 3, ECF No. 19-2; Ramani Decl. ¶¶ 3-5, ECF No. 19-3.)

Plaintiff published *Three Early Stories*, a compilation of three short stories authored by J.D. Salinger ("the Underlying Stories"). (Amd. Cmplt. ¶ 1, ECF No. 27.)  Each of the Underlying Stories is in the public domain in the United States. *(Id.* ¶¶ 11-22.)  Defendants do not have any legal basis to stop Plaintiff from selling *Three Early Stories* in the United States. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss p. 1, ECF No. 15-1.)  Instead, Defendant Trustees contest Plaintiff's legal right to publish *Three Early Stories* internationally. (*Id.*)

Defendants, through their attorneys and agents, have contacted foreign publishers and literary agents by letter and email asserting that publication of *Three Early Stories* violates Defendants' purported foreign copyrights in the Underlying Stories. (Amd. Cmplt. ¶ 39, ECF No. 27.)  Defendants have threatened legal action if Plaintiff's foreign publishers and agents assist with the publication and sale of the work. (*Id.*)

Defendants contend that they are not subject to personal jurisdiction in this Court because they have had no contacts with the state of Tennessee, and they seek dismissal under Rule

12(b)(2) of the Federal Rules of Civil Procedure.[2] Plaintiff has responded that Defendants have profited from the distribution and sales in Tennessee of Salinger's copyrighted works and have received income from such sales so that general personal jurisdiction is proper. Additionally, according to Plaintiff, Defendants interfered with its business relationships and contracts, which Defendants knew would cause harm to Plaintiff in Tennessee, thus making specific personal jurisdiction proper.

In the alternative, Plaintiff requests that, if the Court determines that it does not have personal jurisdiction over Defendant Trustees, the Court transfer the action to the United States District Court for the District of New Hampshire, where Defendant Colleen Salinger resides, rather than dismissing the case.[3] Defendants have not taken a position in favor of or against Plaintiff's alternate request for a transfer of the action although "Defendant Matthew Salinger reserves all rights as to whether jurisdiction over him is proper in that State." (Defs' Reply p. 3 n. 4, ECF No. 19.)

The plaintiff has the burden of establishing personal jurisdiction over each defendant.[4] However, the nature of the burden changes, depending on the approach that the Court takes in deciding the issue.[5] When a Court decides a motion to dismiss for lack of personal jurisdiction based on affidavits and the written record and without an evidentiary hearing, as in the present

---

[2] Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of cases for lack of personal jurisdiction over the defendant.

[3] Under 28 U.S.C. § 1406, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

[4] *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

[5] *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988) (citing *Welsh v. Gibbs*, 631 F.2d 436, 438–39 (6th Cir. 1980), *cert. denied*, 450 U.S. 981 (1981)).

case, "the burden on the plaintiff is relatively slight, ... and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal."[6] The plaintiff may not rely solely on his pleadings in the face of a properly supported motion for dismissal.[7] Instead, the plaintiff must set forth specific facts showing that the Court has jurisdiction.[8] The Court may not consider facts offered by the defendant that conflict with those offered by the plaintiff,[9] but the Court is not required "to ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiffs."[10] Dismissal is proper only if all the facts presented by the plaintiff fail to state a prima facie case for jurisdiction.[11]

The Court applies the law of the state in which it sits, subject to Fourteenth Amendment due process limitations, to determine whether personal jurisdiction exists over a nonresident defendant in a diversity action.[12] Tennessee's long-arm statute extends the personal jurisdiction of Tennessee courts to the limits of the Due Process Clause.[13] Because Tennessee's Long–Arm Statute reaches to federal constitutional limits, the Court must determine whether the assertion of personal jurisdiction over Defendants would violate the Due Process Clause.

---

[6] *Ampco System Parking v. Imperial Parking Canada Corp.*, 2012 WL1066784, at *2 (N.D. Ohio Mar. 28, 2012) (quoting *Air Prods., & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).

[7] *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

[8] *Id.*

[9] *See Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

[10] *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997).

[11] *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

[12] *See Welsh*, 631 F.2d at 439.

[13] *See* Tenn. Code Ann. § 20–2–214(a)(6) (2004).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction.[14] "When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant."[15] General jurisdiction arises when "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state."[16] That is, a court may assert general jurisdiction over an out-of-state defendant only if the defendant's "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'"[17]

In the present case, Plaintiff's argument that this Court has general jurisdiction over Defendant Trustees by virtue of the distribution and sale of Salinger's works in Tennessee fails. The unrefuted evidence shows that Defendant Trustees did not authorize the sale of Salinger's works in this state.[18] Instead, during Salinger's lifetime, he entered into an agreement with Little, Brown and Company, pursuant to which he granted Little Brown an exclusive license to

---

[14] Since *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), "specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2854 (2011) (quoting Twitchell, *The Myth of General Jurisdiction*, 101 Harv. L.Rev. 610, 628 (1988)).

[15] *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 ns. 8 and 9 (1984).

[16] *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989).

[17] *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (quoting *Goodyear Dunlop Tires Operations,* 131 S. Ct. at 2851).

[18] (Decl. of C.M. Salinger, ¶¶ 13-14, ECF No. 15-2; Decl. of M.R. Salinger, ¶ 16, ECF No. 15-3.)

publish his works in the United States.[19] Defendant Trustees have no relationship or interaction with the distributors who contract with Little Brown.[20]

In *Daimler*,[21] the Supreme Court reiterated the narrow standard under which a court examines an allegation of general jurisdiction:

> [O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home. With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction. Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—well as easily ascertainable. These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.

The *Daimler* Court specifically stated that, "[a]lthough the placement of a product into the stream of commerce 'may bolster an affiliation germane to specific jurisdiction,' ... such contacts 'do not warrant a determination that, based on those ties, the forum has general jurisdiction over a defendant.'"[22] Accordingly, if directly selling a product into a state is insufficient to establish general jurisdiction, *a fortiori,* authorizing those sales through a third party is also not sufficient.[23]

---

[19] (*Id.*)

[20] (M. Salinger Supp. Decl. ¶ 3, ECF No. 19-2; Ramani Decl. ¶¶ 3-5, ECF No. 19-3.)

[21] 134 S. Ct. at 760 (alterations and citations omitted).

[22] *Id.* at 757 (alterations and citations omitted).

[23] A defendant's placing goods into the stream of commerce "with the expectation that they will be purchased by consumers within the forum State" may indicate purposeful availment under a specific jurisdiction analysis, as discussed below. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980).

Because Plaintiff has presented no evidence that Defendant Trustees' contacts with Tennessee are so "constant and pervasive" as to "render [them] essentially at home" here,[24] the Court finds that there is no basis to conclude that this Court has general jurisdiction over Defendant Trustees.

As for specific jurisdiction, due process requires that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[25] In determining whether a nonresident defendant has the requisite minimum contacts, the Court employs the following three-part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.[26]

The Supreme Court has clarified that, to support a finding of specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State."[27] "[T]he plaintiff cannot be the only link between the defendant and the forum."[28]

Due process requires that out-of-state defendants have "fair warning" that they could be brought to court in a foreign jurisdiction.[29] This requirement "is satisfied if the defendant has

---

[24] *Daimler,* 134 S. Ct. at 751 (citation omitted).

[25] *International Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

[26] *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

[27] *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).

[28] *Id.* at 1122.

[29] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985).

'purposefully directed' his activities at residents of the forum.... and the litigation results from alleged injuries that 'arise out of or relate to' those activities."[30] The Due Process Clause forecloses personal jurisdiction unless the actions of the "defendant himself ... create[d] a 'substantial connection' with the forum State."[31] Once the court has found that the defendant purposefully established the requisite minimum contacts with the forum state, the court still must determine whether jurisdiction comports with "fair play and substantial justice."[32]

Beginning with the first prong of *Mohasco*, the "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state are such that "he should reasonably anticipate being haled into court there."[33] The defendant's contacts with the forum state must "proximately result from actions by the defendant himself that create a substantial connection with the forum State."[34] Such contacts cannot be "random," "fortuitous," or "attenuated."[35] However, in light of the "inescapable fact of modern life that a substantial amount of business is transacted solely by mail and wire communications across state lines," the absence of physical contact or presence in the state "will not defeat jurisdiction so long as the defendant is

---

[30] *Id.* at 472 (citations omitted).

[31] *Id.* at 475 (citations omitted). *See also Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 112 (1987) (action of defendant must be purposefully directed toward forum state).

[32] *Burger King*, 471 U.S. at 476 (quoting *International Shoe*, 326 U.S. at 320).

[33] *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996).

[34] *Id.* at 1263 (quoting *Burger King*, 471 U.S. at 475).

[35] *Burger King*, 471 U.S. at 475.

deliberately engaged in efforts within the state."[36]  A finding of purposeful availment is essential to establishing specific jurisdiction.[37]

With respect to purposeful availment, the Sixth Circuit has adopted the "stream of commerce 'plus' approach," under which "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposely directed toward the forum State."[38]  "The question is whether a defendant has followed a course of conduct directed at the society or economy within the jurisdiction of a given sovereign."[39]

The court in *One Media IP Ltd. v. S.A.A.R. SrL*,[40] found that the plaintiff had not met its burden to show that the defendant purposely availed itself of the privilege of transacting business in Tennessee.  In making this finding, the Court applied the factors set out in *Eaves v. Pirelli Tire*[41] in its purposeful availment analysis in a stream of commerce plus context: (1) the defendant's direction or control over the flow of the product into the forum; (2) the quantity of the defendant's particular product regularly flowing into the forum; and (3) the distinctive features of the forum that connect it with the product in question.  The *One Media* court determined that the plaintiff had not shown that the defendant "specifically marketed its product

---

[36] *Id.* at 476.

[37] *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).

[38] *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 479–80 (quoting *Asahi Metal Indus. Co., Ltd., v. Superior Court*, 480 U.S. 102 (1987) (O'Connor, J.) (plurality op.)).

[39] *J. McIntyre Mach. v. Nicastro*, 131 S.Ct. 2780, 2789 (2011).  Because in *Nicastro* the Supreme Court did not resolve the circuit split concerning the "stream of commerce" approach and the "stream of commerce plus" approach, the Sixth Circuit's "stream of commerce plus" approach continues be controlling. *See, e.g., Lindsey v. Cargotec USA, Inc.*, 2011 WL 4587583, at *7 (W.D. Ky. Sept. 30, 2011) (discussing continuing validity of *Bridgeport* standard).

[40] 2015 WL 4716813, at *8 (M.D. Tenn. 2015).

[41] 2014 WL 1883791, at *14 (D. Kan. May 12, 2014).

to Tennesseans directly or indirectly or that [the defendant] otherwise specifically directed any sales to occur in Tennessee."[42]  A "broad intention to target the United States through a third party is not sufficient to establish purposeful availment."[43]

As in *One Media*, Defendant Trustees did not directly contract with end consumers in Tennessee and did not control the flow of Salinger's works into Tennessee.  Instead, Little Brown  contracted with the distributors of those works.  "[K]nowledge that a licensee was likely to distribute compositions nationally, coupled with its lack of objection to Tennessee sales, if such sales were ever to occur, is insufficient conduct upon which to predicate purposeful availment."[44]  The "stream of commerce plus" test is not met when the "defendant was 'merely aware' of the fact of national distribution, but the choice to distribute was 'pretty much out of [its] hands.'"[45]  Thus, Plaintiff has failed to establish the first prong of *Mohasco*.

As to the second prong of *Mohasco*, the Court must determine whether the cause of action arises from the Defendants' activities in Tennessee.  The "arising from" requirement is satisfied when the operative facts of the controversy arise from the defendant's contacts with the state.[46]  "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract."[47]

---

[42] *One Media*, 2015 WL 4716813, at *8.

[43] *Id.*

[44] *Id.* (citing *Bridgeport*, 327 F.3d at 480). *See, e.g., Williams v. Romarm*, 756 F. Supp. 777, 785 (D.C. Cir. 2014); *AESP v. Signamax*, 29 F. Supp.3d 683, 690-91 (E.D. Va. 2014) (no specific personal jurisdiction when "record reflects no more than that defendant might expect that the products would eventually be sold somewhere in the United States, including [the forum state]").

[45] *Palnik v. Westlake Entertainment, Inc.*, 344 F. App'x. 249, 251 (6th Cir. 2009) (citing *Bridgeport*, 327 F.3d at 480–83).

[46] *Mohasco*, 401 F.2d at 384.

Plaintiff argues that Defendants should have reasonably anticipated being brought to court in Tennessee to defend their alleged interference with contracts and business relationships because those contracts were executed in and were to be performed by a Tennessee company in Tennessee.  However, despite the location of Plaintiff's actions, none of Defendants' actions occurred in Tennessee.  Instead, the correspondence that Defendants' attorneys and agents sent was to "foreign publishers and literary agents by letter and email asserting that publication of *Three Early Stories* violates Defendants' purported foreign copyrights in the Underlying Stories."[48]

As evidence of Defendants' purported activities in Tennessee, Plaintiff has submitted correspondence between its attorney, who was located in Memphis, Tennessee, and the attorney for Defendant Trustees. Defendants' correspondence with Plaintiff's attorney was made in an effort to resolve the disputed issues.  Courts may decline to find specific jurisdiction when the defendant's contact with the forum state is limited to an attempt to resolve the parties' dispute.[49] Because Plaintiff's claims do not arise from the activities of Defendant Trustees in the forum state, Plaintiff has not met the second prong of *Mohasco*.

The final element of the *Mohasco* test is whether the acts of the defendant or consequences caused by the defendant have a sufficient connection with the forum state to make

---

[47] *Id.*

[48] (Amd. Cmplt. ¶ 53 ("Defendants, in an effort to prevent Devault-Graves from lawfully exploiting its copyrights, intentionally, maliciously, and recklessly sent correspondence to Devault-Graves's foreign publishers and literary agents to induce those parties to breach and/or terminate their contracts with Devault-Graves and to prevent entirely the foreign publication of *Three Early Stories*."), ECF No. 27.)

[49] *See Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489, 495 (6th Cir. 2008) (citation omitted).

the exercise of personal jurisdiction reasonable. This element turns on whether Tennessee has an interest in resolving the conflict such that jurisdiction over the defendant is reasonable.[50] Factors to consider include: (1) the burden on the nonresident defendant; (2) the forum state's interest; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy.[51] Although Plaintiff has an interest in the relief it seeks, the burden on Defendants of defending a lawsuit in Tennessee would be significant. Furthermore none of Defendants' alleged wrongdoings occurred within Tennessee.

Plaintiff has failed to meet its "slight burden" of showing the existence of contacts between Defendant Trustees and Tennessee sufficient to authorize the exercise of personal jurisdiction under Tennessee's long-arm statute and the Due Process Clause. This Court, therefore, does not have personal jurisdiction, either general or specific, over Defendant Trustees.

Plaintiff has asked the court to transfer the action to the District Court of New Hampshire if it finds that it does not have personal jurisdiction over Defendants. For the sake of efficiency, fairness, and in the interest of justice, this Court elects to transfer the case to the District Court of New Hampshire, the home of Defendant Trustee Colleen Salinger, pursuant to 28 U.S.C. § 1406(a), rather than dismissing the action.[52] Accordingly, Defendant Trustees' motion to dismiss is **GRANTED** on the issue of lack of personal jurisdiction and **DENIED** without prejudice on all other issues. This matter is **TRANSFERRED** to the United States District Court for New Hampshire for all further proceedings.

---

[50] *Mohasco*, 401 F.2d at 384.

[51] *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005).

[52] A court may transfer a case under § 1406(a) even if it lacks personal jurisdiction over a defendant. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).

**IT IS SO ORDERED**.

                                        **s/ S. Thomas Anderson**
                                        S. THOMAS ANDERSON
                                        UNITED STATES DISTRICT COURT

                                        Date:  October 19, 2015.