## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

THE DEVAULT-GRAVES AGENCY, LLC,    )
                                           )

       Plaintiff                 )

       v.                      )    Civil Action No. 1:15-cv-00458-JL

COLLEEN M. SALINGER and MATTHEW R,  )
SALINGER, As Trustees of the J.D. SALINGER  )
LITERARY TRUST,                   )

       Defendant              )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE AMENDED COMPLAINT

Cynthia S. Arato
Daniel J. O'Neill
SHAPIRO ARATO LLP
500 Fifth Avenue, 40th Floor
New York, New York 10110
Phone: (212) 257-4880
carato@shapiroarato.com
doneill@shapiroarato.com
*Pro hac vice applications pending*

Michael S. Lewis (NH Bar No. 16466)
RATH, YOUNG AND PIGNATELLI, P.C.
1 Capital Plaza
Concord, New Hampshire  03301
Phone:  (603) 226-2600
msl@rathlaw.com

*Attorneys for Defendants*

TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL HISTORY.................................................................................................. 3

BACKGROUND ................................................................................................................... 4

   A.  The Trustees and the Salinger Stories................................................................... 4

   B.  Plaintiff's Allegations Concerning International Copyright Law......................... 4

   C.  The German Judgment ........................................................................................... 5

   D.  Plaintiff's Allegations About Its Foreign Publishers and Agents......................... 7

   E.  Plaintiff's Alternative Declaratory Judgment Claim ........................................... 8

ARGUMENT........................................................................................................................ 8

POINT I. THE COURT SHOULD EXERCISE ITS DISCRETION AND
DECLINE TO HEAR THIS DECLARATORY JUDGMENT ACTION
INVOLVING COMPLICATED QUESTIONS OF FOREIGN LAW ..................................... 9

   A.  The Judgment Will Not Clarify or Settle the Legal Relations, Serve
       a Useful Purpose, or Terminate the Controversy, Uncertainty and Insecruity ............. 11

      i.  The Rule of the Shorter Term should not apply to a
         failure to follow formalities ..................................................................... 11

      ii. Berne requires an analysis of other treaties and internal laws................................. 13

   B.  The Legal Issues in Dispute Should Be Resolved by Foreign Courts ........................... 15

POINT II. PLAINTIFF FAILS TO STATE A CLAIM FOR TORTIOUS
INTERFERENCE UNDER TENNESSEE LAW................................................................... 17

   A.  Plaintiff Fails to Allege Facts Supporting a Claim of Tortious Interference
       with Contract........................................................................................................ 17

   B.  Plaintiff Fails to Allege Facts Supporting a Claim of Tortious Interference
       with Buisness Relationships ................................................................................. 21

POINT III. PLAINTIFF FAILS TO STATE A CLAIM FOR A DECLARATION
REGARDING THE TRUSTEES' OWNERSHIP.................................................................. 23

CONCLUSION ..................................................................................................................... 25

TABLE OF AUTHORITIES

**Page**

## Cases

*Adidas Am., Inc. v. Herbalife Int'l, Inc.*,
No. CV 09-661-MO, 2011 WL 3359987 (D. Or. Aug. 1, 2011) ............................................. 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................. 8, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................... 8

*Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*,
385 F.3d 1291 (10th Cir. 2004) ..................................................................................... 15

*Bolton v. Morgan*,
No. 05-2315 MA/P, 2006 WL 840422 (W.D. Tenn. Mar. 29, 2006) ........................... 17, 21, 22

*Boston's Children First v. Boston Sch. Comm.*,
183 F. Supp. 2d 382 (D. Mass. 2002), *aff'd sub nom.*, *Anderson
ex rel. Dowd v. City of Boston*, 375 F.3d 71 (1st Cir. 2004) ..................................... 10

*Buettgen v. Harless*,
263 F.R.D. 378 (N.D. Tex. 2009) ................................................................................. 15

*Crane v. Poetic Prods. Ltd.*,
593 F. Supp. 2d 585 (S.D.N.Y.), *aff'd*, 351 F. App'x 516 (2d Cir. 2009)............................... 15

*Crane v. Poetic Products Ltd.*,
351 F. App'x 516 (2d Cir. 2009) .............................................................................. 15, 16

*Deutsche Zentral-Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc.*,
No. 12 Civ. 4025 (AT), 2013 WL 6667601 (S.D.N.Y. Dec. 17, 2013)...................................... 9

*Dickert v. North Coast Family Health*,
No. 14-cv-316-JL, 2015 WL 3988676 (D.N.H. June 10, 2015) .................................................. 8

*Donovan v. Digital Equip. Corp.*,
883 F. Supp. 775 (D.N.H. 1994)..................................................................................... 20

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003)........................................................................................... 10

*Duffey v. Twentieth Century Fox Film Corp.*,
14 F. Supp. 3d 120 (S.D.N.Y. 2014)............................................................................... 24

*East Penn Sanitation, Inc. v. Grinnell Haulers, Inc.*,
  294 N.J. Super. 158 (App. Div. 1996) ............................................................... 19

*El Dia, Inc. v. Hernandez Colon*,
  963 F.2d 488 (1st Cir. 1992) ............................................................................... 9

*EMC Corp. v. Roland*,
  916 F. Supp. 51 (D. Mass. 1996) ...................................................................... 16

*Ernst & Young v. Depositors Econ. Prot. Corp.*,
  45 F.3d 530 (1st Cir. 1995) ................................................................................. 9

*Esoterix Genetic Labs. LLC v. Qiagen Inc.*,
  No. 14-CV-13228-ADB, --- F. Supp. 3d ---,
  2015 WL 5680331 (D. Mass. Sept. 25, 2015) .................................................. 24

*Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*,
  461 F. Supp. 2d 629 (M.D. Tenn. 2006) ...................................................... 18, 22

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*,
  905 F. Supp. 169 (S.D.N.Y. 1995) .................................................................... 15

*Kemp v. Tyson Foods, Inc.*,
  No. CIV 96-173 JRT/RLE, 2001 WL 391552 (D. Minn. Mar. 31, 2001) ................ 20

*KG Urban Enters., LLC v. Patrick*,
  693 F.3d 1 (1st Cir. 2012) ................................................................................... 9

*Knickerbocker Toy Co. v. Winterbrook Corp.*,
  554 F. Supp. 1309 (D.N.H. 1982) ..................................................................... 20

*Leadsinger, Inc. v. Cole*,
  No. 05 Civ. 5606 (HBP), 2006 WL 2320544 (S.D.N.Y. Aug. 10, 2006) ............... 18

*Leather Form S.R.L. v. Knoll, Inc.*,
  205 F. App'x 861 (2d Cir. 2006) ...................................................................... 16

*Marshall Motor Homes Int'l, Inc. v. Newmar Corp.*,
  No. 3:01-CV-397, 2003 WL 23333579 (E.D. Tenn. Dec. 5, 2003) ....................... 19

*Matsushita Elecs. Corp. v. Loral Corp.*,
  974 F. Supp. 345 (S.D.N.Y. 1997) .................................................................... 23

*McKenna v. First Horizon Home Loan Corp.*,
  475 F.3d 418 (1st Cir. 2007) ............................................................................. 10

*Metro. Prop. & Liab. Ins. Co. v. Kirkwood,*
    729 F.2d 61 (1st Cir. 1984) .................................................................................. 10

*Michnovez v. Blair, LLC,*
    795 F. Supp. 2d 177 (D.N.H. 2011) ...................................................................... 17

*Montgomery Cnty. Ass'n of Realtors v. Realty Photo Master Corp.,*
    878 F. Supp. 804 (D. Md. 1995) ........................................................................... 20

*Norvell Skin Solutions, LLC v. Solaire Pty Ltd.,*
    No. 2:13-CV-0117, 2014 WL 3353246 (M.D. Tenn. July 8, 2014) ........................ 21

*Occusafe, Inc. v. EG&G Rocky Flats, Inc.,*
    54 F.3d 618 (10th Cir. 1995) ............................................................................... 19

*Out of Box Promotions, LLC v. Koschitzki,*
    55 A.D.3d 575, 866 N.Y.S.2d 677 (2d Dep't 2008) .............................................. 22

*P. Kaufmann, Inc. v. Americraft Fabrics, Inc.,*
    232 F. Supp. 2d 220 (S.D.N.Y. 2002) .................................................................. 20

*Patterson v. Novartis Pharm. Corp.,*
    51 F. App'x 495 (6th Cir. 2011) ............................................................................ 18

*Platten v. HG Berm. Exempted Ltd.,*
    437 F.3d 118 (1st Cir. 2006) ................................................................................ 17

*Polk & Sullivan, Inc. v. United Cities Gas Co.,*
    783 S.W.2d 538 (Tenn. 1989) .............................................................................. 19

*Pop Warner Little Scholars, Inc. v. New Hampshire Youth Football & Spirit Conference,*
    Civ. No. 06-CV-98-SM, 2007 WL 676704 (D.N.H. Mar. 1, 2007) ........................ 10

*Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.,*
    No. 13-cv-3767 (NSR), 2014 WL 4772340 (S.D.N.Y. Apr. 1, 2014) ...................... 22

*Riggs v. Royal Beauty Supply, Inc.,*
    879 S.W.2d 848 (Tenn. Ct. App. 1994) ................................................................ 20

*Roberts v. Gen. Motors Corp.,*
    138 N.H. 532, 643 A.2d 956 (1994) ..................................................................... 23

*Salinger v. Piper Verlag GmbH,*
    Ref. No. 15 0 62/15, Regional Court of Berlin, Germany (Mar. 31, 2015) ...................... *passim*

*Silverstein v. Penguin Putnam, Inc.*,
  368 F.3d 77 (2d Cir. 2004)..................................................................................... 4

*Smith v. Rosenthal Collins Group, LLC*,
  No. 03-2360 M1/AN, 2005 WL 2210208 (W.D. Tenn. Sept. 10, 2005) ................................. 18

*In re StockerYale Sec. Litig.*,
  453 F. Supp. 2d 345 (D.N.H. 2006).................................................................................. 9

*St. Paul Fire & Marine Ins. Co. v. Runyon*,
  53 F.3d 1167 (10th Cir. 1995) ...................................................................................... 16

*Therapearl, LLC v. Rapid Aid Ltd.*,
  No. CCB-13-2792, 2014 WL 4794905 (D. Md. Sept. 25, 2014)............................................ 16

*Thome v. Alexander & Louisa Calder Found.*,
  70 A.D.3d 88, 890 N.Y.S.2d 16 (1st Dep't 2009) ................................................................ 22

*Thompson v. Bank of Am., N.A.*,
  773 F.3d 741 (6th Cir. 2014) ....................................................................................... 18

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*,
  71 S.W.3d 691 (Tenn. 2002)......................................................................................... 22

*Tsiatsios v. Anheuser-Busch, Inc.*,
  Civ. No. 07-CV-003-JL, 2009 WL 114557 (D.N.H. Jan. 16, 2009) ....................................... 20

*Warner Bros. Entm't Italia s.p.a. v. Passworld s.r.l et al.*,
  Court of First Instance of Milan, Italy (Feb. 6, 2013). ................................................. 12, 13, 14

*Watson's Carpet & Floor Coverings, Inc. v. McCormick*,
  247 S.W.3d 169 (Tenn. Ct. App. 2007) .............................................................................. 21

*Williams v. BASF Catalysts LLC*,
  765 F.3d 306 (3d Cir. 2014)........................................................................................... 15

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995)....................................................................................................... 9

*Winfree v. Educators Credit Union*,
  900 S.W.2d 285 (Tenn. Ct. App. 1995) ......................................................................... 18, 19

**Statutes, Treaties and Rules**

17 U.S.C. § 104A .............................................................................................................. 12

17 U.S.C. § 204(a) ............................................................................................................ 23

17 U.S.C. § 205(a) ............................................................................................................ 23

28 U.S.C. § 2201 (Declaratory Judgment Act) .................................................. 1, 9, 17

Tennessee Code § 47-50-109 .......................................................................................... 17

Berne Convention for the Protection of Literary and Artistic Works ................................... *passim*

Fed. R. Civ. P. 44.1 .................................................................................................... 6, 9

Fed. R. Evid. 201(b) ......................................................................................................... 9

**Other Authorities**

Lisa M. Brownlee, Recent Changes in the Duration of Copyright in
the United States and European Union: Procedure and Policy,
6 FORDHAM INTELL. PROP. MEDIA & ENT. L.J. 579 (1996) ....................................... 12

Orrin G. Hatch, *Better Late Than Never: Implementation of the 1886 Berne Convention*,
22 CORNELL INT'L L.J. 171 (1989) ........................................................................... 12

Restatement (Second) of Torts § 768 .......................................................................... 19

World Intellectual Property Organization, *Guide to the Berne Convention for the
Protection of Literary and Artistic Works (Paris Act, 1971)* (1978),
*available at* http://www.wipo.int/freepublications/en/ ............................................. 12

10B Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE § 2759 (3d ed. 1998) .............. 10

## PRELIMINARY STATEMENT

This case is about whether a United States District Court should exercise its discretion under the Declaratory Judgment Act to determine complex questions of international copyright law "throughout the world" – specifically whether three stories by the late American author J.D. Salinger are in the public domain in as many as 168 foreign countries. Plaintiff ignores that to make this determination, this Court would not only have to evaluate a series of complicated questions of international copyright law; it would have to do so on a country-by-country basis for each of the 168 countries encompassed in Plaintiff's claim. As framed by Plaintiff's Amended Complaint, resolution of the issues could have no certain effect on the rights and obligations of any party. Even after expending the substantial judicial resources that would be necessary to properly resolve this matter, this Court could not be confident that the foreign jurisdictions where Plaintiff would seek to perfect the judgment of the Court would provide weight to the Court's judgment. Under these circumstances, this Court should decline to exercise its discretion to hear Plaintiff's claim for declaratory relief and should instead defer to foreign courts to interpret and apply their own internal copyright laws.

Plaintiff Devault-Graves Agency, LLC is a book publisher based in Tennessee. Last year, it packaged and began selling the three Salinger stories (the "Salinger Stories") in the United States under the title *Three Early Stories*. Plaintiff has no connection to either J.D. Salinger or his literary works. Rather, it published its "collection" in the United States because it determined that the stories had previously fallen into the public domain in this country under technical requirements of United States copyright law, known as "formalities," that govern works published before 1978.

At the same time, Plaintiff also embarked on a plan to exploit *Three Early Stories* "throughout the world," even though Plaintiff does not claim to have researched the public

domain status of the Salinger Stories in any country outside the United States and despite the fact that entirely different rules apply to this question abroad. At bottom, Plaintiff contends that the Salinger Stories must be in the public domain in each of these foreign countries solely because the works are in the public domain here. To support this contention, Plaintiff relies on one narrow part of one international copyright treaty – the so-called "Rule of the Shorter Term" of the Berne Convention – which it argues provides a one-size-fits-all answer to this question.

The world is not so simple. Currently, 168 countries have signed on to Berne, and an individualized inquiry into the laws of each of those countries would be needed to answer the question that Plaintiff asks this Court to determine in one fell swoop – for the entire world. In order to determine the rights in the Salinger Stories in any country outside the United States, the Court would have to examine, at a minimum: (1) Article 20 of Berne, which allows Berne signatories to enter agreements granting authors "more extensive rights than those granted by" the so-called Rule of the Shorter Term; (2) the terms of those other agreements, which can include other international treaties between that country and the United States; (3) each specific foreign country's own copyright laws; (4) each country's interpretation of Berne, including the Rule of the Shorter Term; and (5) the application of these legal authorities to the Salinger Stories in each foreign country.

Plaintiff explored none of these questions when it began to exploit the Salinger Stories around the world, as its Amended Complaint reveals. Indeed, Plaintiff's shoot first, aim later approach is best illustrated by its recent efforts to exploit *Three Early Stories* in Germany. Plaintiff purported to license this work to a German publisher and refused to halt that exploitation even after the Trustees initiated legal proceedings in papers that explained why the publication infringed the Trustees' rights in Germany. On March 31, 2015, the Regional Court

of Berlin enjoined the publication in a ruling that firmly established that the Salinger Stories remain protected in Germany, regardless of their public domain status here, and properly questioned how Plaintiff "could have trustworthily assessed and reliably clarified the complex copyright situation in Germany." This ruling, even standing alone, belies Plaintiff's contention that Defendants "have objected" to the "international publication" of *Three Early Stories* "without any legal basis."

Plaintiff's action is critically flawed in other respects as well. Plaintiff's claim for tortious interference with contract and business relationships must be dismissed. Plaintiff alleges that the Trustees allegedly interfered with Plaintiff's efforts to exploit *Three Early Stories* abroad because the Trustees notified certain individuals of this complex area of law and that the Trustees had not authorized the exploitation of Plaintiff's work. Even accepting Plaintiff's allegations as true, Plaintiff fails to state an interference claim as a matter of law because Plaintiff does not adequately allege: (a) the existence of any contract; (b) an actual breach of any contract; or (c) that the Trustees did anything unlawful with respect to any contract or business relationship by seeking to protect their own intellectual property rights. Finally, Plaintiff also seeks a declaration that the Trustees own no rights in the Salinger Stories but does not plausibly allege any basis for its claim.

In further support of this motion to dismiss, the Trustees state as follows:

## PROCEDURAL HISTORY

Plaintiff initially brought this action in the Western District of Tennessee. *See* ECF Doc. No. 1. The Trustees moved to dismiss Plaintiff's Complaint in its entirety on the grounds, among others, that the Court lacked personal jurisdiction over the Trustees, the Court should not entertain Plaintiff's claim for a declaratory judgment regarding the Berne Convention, and

Plaintiff's remaining claims failed to state a claim. *See* ECF Doc. No. 15. Plaintiff thereafter

filed an Amended Complaint against the Trustees in the Tennessee District Court. ECF Doc. No.

27 ("Am. Compl."). By Order dated October 19, 2015, the Tennessee District Court granted the

Trustees' motion to dismiss the action for lack of personal jurisdiction and transferred the action

to this Court and, in light of the transfer, denied without prejudice all of the remaining grounds.

*See* ECF Doc. No. 28; ECF Doc. No. 29. On November 9, 2015, this Court entered a procedural

order authorizing the filing of this renewed motion to dismiss. ECF Doc. No. 30.

## BACKGROUND

### A. The Trustees and the Salinger Stories

The Trustees are the trustees of the J.D. Salinger Literary Trust ("Trust"), "a trust

established by J.D. Salinger and into which J.D. Salinger has transferred certain intellectual

property rights." (Am. Compl. ¶¶ 6-8). The Salinger Stories at issue here are: "The Young

Folks," originally published in *Story* magazine in February 1940; "Go See Eddie," originally

published in the *University of Kansas City Review* in December 1940; and "Once A Week Won't

Kill You," originally published in *Story* magazine in 1944. (*Id.* ¶¶ 13, 15, 19). Plaintiff alleges

that each of these stories received copyright protection in the United States for a term of 28 years

after its publication and thereafter fell into the public domain. (*Id.* ¶¶ 13-14, 17-18, 21-22).

### B. Plaintiff's Allegations Concerning International Copyright Law

In 2014, Plaintiff packaged the Salinger Stories together, verbatim, in a book titled *Three*

*Early Stories* and began exploiting that work in the United States after confirming that the stories

had fallen into the public domain in this country. (Am. Compl. ¶¶ 24-26).[1] Plaintiff, however,

---

[1] Plaintiff alleges that its "unique compilation is protected by federal copyright law." (Am. Compl. ¶ 27). But Plaintiff concedes that it included the Salinger Stories in its publication because they are the only Salinger stories that are in the public domain. (*Id.* ¶¶ 24-26 & Ex. A). By its own admission, then, Plaintiff's "compilation" includes no degree of creativity; its principle of selection was merely all-inclusiveness. Accordingly, Plaintiff can possess no copyright in its supposed selection of these three works. *See Silverstein v. Penguin Putnam, Inc.*, 368

also began exploiting its work in unspecified countries throughout the world (*id.* at ¶ 38), even though Plaintiff does not claim to have first conducted any diligence into whether the stories are protected by copyright abroad. (*Cf. id.* ¶¶ 24-25).

Nonetheless, Plaintiff now seeks a declaration from this Court that Plaintiff "is legally entitled to exploit its copyright for *Three Early Stories* in all countries that have signed the Berne Convention and follow the Rule of the Shorter Term" because "[i]n countries that apply the Rule of the Shorter Term, the [Salinger] Stories are also [allegedly] in the public domain." (*Id.* ¶¶ 45-48).

> According to the Amended Complaint:
>
> Article 7 of the Berne Convention governs the term length for the copyright protection of a work. Article 7 holds, "In all cases, the term shall be governed by legislation of the country where protection is claimed; however, unless the legislation of that country otherwise provides, the term shall not exceed the term fixed by the country of origin of the work." Berne Convention, art. 7(8). This is known in copyright law as the Rule of the Shorter Term, which provides that in foreign jurisdictions the term of a work's copyright shall not exceed the term of the work's copyright in the country of origin.

(*Id.* ¶ 47). Plaintiff's conclusion makes no accommodation for the domestic laws of foreign countries, how these foreign countries interpret Berne, or any other treaties that might dictate the applicable terms of protection within their borders.

## C. The German Judgment

Plaintiff also fails to apprise the Court of developments under foreign law that are inconsistent with its theory of the case. In late 2014, the German publisher, Piper Verlag GmbH ("Piper"), announced that it would publish a German translation of *Three Early Stories* in Germany. (Decl. of Cynthia S. Arato, Dec. 9, 2015, Ex. 1 ("Germ. J.") at 3). The Trustees sent Piper a cease-and-desist letter in January 2015 and, when Piper disregarded that letter,

---

F.3d 77, 80 & 83 (2d Cir. 2004). At most, any U.S. copyright Plaintiff could obtain would cover no more than the work's title, cover art and illustrations.

commenced a legal proceeding against Piper in Germany. (*Id.* at 4-5).  On March 31, 2015, the

Regional Court of Berlin (the "German Court") issued a Judgment in favor of the Trustees (the

"German Judgment"), enjoining Piper from reproducing or selling *Three Early Stories* in

Germany and ordering Piper to recall any copies that had already been delivered to bookstores.

(*Id.* at 2).[2]

Contrary to Plaintiff's contention that Berne's Rule of the Shorter Term catapults the

Salinger Stories into the public domain, the German Court observed that the Salinger Stories

"still enjoy copyright protection" under Berne.  (*Id.* at 11).  The Court held that it need not

explain those protections, however, because Article 20 of Berne "gives priority" to an earlier

treaty, and the Salinger Stories are protected under that treaty as well, pursuant to a provision of

the German Copyright Act that affords foreign nationals the protection of that treaty. (*Id.* at 10-

11).

As the German Court explained:

According to Article 1 of the German-American treaty of 1892, which still
remains in force, the citizens of the USA should in the German Reich enjoy the
protection of the works of literature against unauthorized reproduction based on
the same protection to which members of the Reich are also entitled according to
law.  The US citizens are, according to this, afforded copyright protection in
Germany according [to] German law. *The duration of the protection in Germany
is also governed exclusively by German law; thus, it does not depend on whether
and, as the case may be, how long the work in question is still protected in the
USA.*

(*Id.* at 10 (emphasis added)).  As the German Court concluded, "in Germany the works are still

within the term of copyright protection." (*Id.* at 11).

The Court, finally, criticized Piper for relying on Plaintiff's questionable assurances

regarding the "complex copyright situation in Germany":

---

[2] On issues of foreign law, a court "may consider any relevant material or source . . . whether or not submitted by a
party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.

[Piper] acted unlawfully.  The consent of the author or the [Trustees] has not been given to [Piper].  The license by the publisher Devault-Graves Agency might relate to potential rights with regard to the new American edition of the book as such, but it cannot invalidate the rights of the [Trustees] in the present case.

. . . The responsibility rested on [Piper], to exhaustively assure itself – prior to the adaptation, publication and exploitation – with regard to its entitlement.  This is all the more, as [its] own German lawyers in their protective writ regard the legal matter as being too complex for a speedy trial, thus as particularly difficult.  In such situation, [Piper] has limited itself . . . to trusting in a declaration of its licensor.  The Defendant has left open, what could have entitled it to assume that the US American publisher could have trustworthily assessed and reliably clarified the complex copyright situation in Germany.

(*Id.* at 13-14).  Piper did not appeal the German Court's ruling.

### D.  Plaintiff's Allegations About Its Foreign Publishers and Agents

The Amended Complaint alleges generally that Plaintiff "entered in to [sic] contracts with various foreign publishers and agents" (Am. Compl. ¶ 38), and that the Trustees interfered with those contracts and other unspecified "business relationships" by representing to foreign publishers and literary agents that publication of *Three Early Stories* abroad violates the Trustees' rights in the Salinger Stories, and by "threaten[ing] legal action."  (*Id.* ¶ 39; *see id.* ¶ 56).  The Amended Complaint, however, is bereft of any details regarding these supposed deals or relationships.  Plaintiff does not specify the publishers or agents with which it contracted or had business relationships, the number of contracts it entered, the dates the contracts were entered into, the contracts' terms, or the countries to which those contracts or other business relationships relate.  Nor does Plaintiff allege any true breach of any contractual obligation.  Rather, Plaintiff alleges, ambiguously, only that "several parties breached *and/or* terminated their contracts with Devault-Graves" (*id.* ¶ 54 (emphasis added)) – a formulation that leaves wide open the possibility that these unidentified parties ended their relationship with Plaintiff in a manner that did not place them in breach.  And although the Amended Complaint asserts baldly

that the Trustees acted "intentionally, maliciously, and recklessly" (*id.* ¶ 53), Plaintiff concedes

that the Trustees were trying to protect their "purported foreign copyrights" (*id.* ¶ 39).

### E. Plaintiff's Alternative Declaratory Judgment Claim

Plaintiff also seeks a declaration that the Trust "does not own the copyrights in and to the

Underlying Stories." (Am. Compl. ¶ 49). Plaintiff alleges no factual basis for this assertion.

Instead, Plaintiff merely concludes, on "information and belief," that J.D. Salinger did not assign

these copyrights to the Trustees because the Trust previously recorded with the U.S. Copyright

Office a written assignment documenting the transfer of select works from J.D. Salinger and that

particular document did not assign these stories. (*Id.* ¶¶ 29-32).

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Merely

pleading facts that are consistent with a defendant's liability or that permit the court to infer

misconduct is insufficient. *Id.* "Where a complaint pleads facts that are 'merely consistent with'

a defendant's liability, it 'stops short of the line between possibility and plausibility of

entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In assessing a motion to dismiss, "[t]he court accepts the well-pleaded facts of the

complaint as true and draws all reasonable inferences in the plaintiff's favor but disregards

statements in the complaint that merely offer legal conclusions couched as fact or threadbare

recitals of the elements of a cause of action." *Dickert v. North Coast Family Health*, No. 14-cv-

316-JL, 2015 WL 3988676, at *1 (D.N.H. June 10, 2015) (citations and internal quotation marks

omitted) (granting motion to dismiss in part).  In addition, this Court has ruled that it may take

"judicial notice of facts 'capable of accurate and ready determination by resort to sources whose

accuracy cannot reasonably be questioned.'"  *In re StockerYale Sec. Litig.*, 453 F. Supp. 2d 345,

348 (D.N.H. 2006) (quoting Fed. R. Evid. 201(b)).  The Court also may take account of foreign

laws on a motion to dismiss, in the same way that it decides questions of domestic law.  *See, e.g.,*

*Deutsche Zentral-Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc.*, No. 12 Civ. 4025

(AT), 2013 WL 6667601, at *7 (S.D.N.Y. Dec. 17, 2013) (deciding issues of foreign law on a

motion to dismiss); Fed. R. Civ. P. 44.1 (the court's determination of an issue of foreign law

"must be treated as a ruling on a question of law").

## I. THE COURT SHOULD EXERCISE ITS DISCRETION AND DECLINE TO HEAR THIS DECLARATORY JUDGMENT ACTION INVOLVING COMPLICATED QUESTIONS OF FOREIGN LAW.

This Court may exercise its discretion to dismiss an action under the Federal Declaratory

Judgment Act, 28 U.S.C. § 2201(a), even when a federal district court has subject matter

jurisdiction, where the matter is not appropriate for judicial resolution by a federal court.  *El Dia,*

*Inc. v. Hernandez Colon*, 963 F.2d 488, 493 (1st Cir. 1992) ("The Declaratory Judgment Act is

uncommon in that it neither imposes an unflagging duty upon the courts to decide declaratory

judgment actions nor grants an entitlement to litigants to demand declaratory remedies.").

Indeed, federal district courts possess "'unique and substantial discretion in deciding

whether to declare the rights of litigants.'"  *KG Urban Enters., LLC v. Patrick*, 693 F.3d 1, 27

(1st Cir. 2012) (affirming denial of declaratory relief on prudential grounds at the motion to

dismiss stage of litigation) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)); *see*

*Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 534 (1st Cir. 1995) ("Because the

Act offers a window of opportunity, not a guarantee of access, . . . federal courts retain

substantial discretion in deciding whether to grant declaratory relief.").

In exercising that discretion, courts principally assess: (1) whether "'the judgment will serve a useful purpose in clarifying and settling the legal relations in issue'"; and (2) whether "'it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Boston's Children First v. Boston Sch. Comm.*, 183 F. Supp. 2d 382, 396 (D. Mass. 2002), *aff'd sub nom. Anderson ex rel. Dowd v. City of Boston*, 375 F.3d 71 (1st Cir. 2004) (quoting 10B Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE § 2759 (3d ed. 1998)); *see also Metro. Prop. & Liab. Ins. Co. v. Kirkwood*, 729 F.2d 61, 62 (1st Cir. 1984) (listing as relevant considerations "Will a declaratory judgment help clarify the legal questions at issue?" and "Will it relieve the uncertainty or insecurity that gave rise to the dispute?").

If a declaratory judgment will not "settle the controversy," the Court should deny the request for declaratory relief. *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 427 n.6 (1st Cir. 2007) (vacating class certification and remanding for further relief). Additionally, courts should consider principles of "comity and judicial economy." *Pop Warner Little Scholars, Inc. v. New Hampshire Youth Football & Spirit Conference*, Civ. No. 06-CV-98-SM, 2007 WL 676704, at *4 (D.N.H. Mar. 1, 2007) (declining to hear declaratory judgment petition because it was governed by state law). Of particular relevance here, courts should decline to hear declaratory judgment claims that "would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003) (affirming grant of motion to dismiss).

These considerations dictate that the Court should dismiss Plaintiff's declaratory judgment claim concerning Berne.

A.  **The Judgment Will Not Clarify or Settle the Legal Relations, Serve a Useful Purpose, or Terminate the Controversy, Uncertainty and Insecurity.**

Plaintiff seeks a general, sweeping declaration that "Devault-Graves is legally entitled to exploit its copyright for *Three Early Stories* in all countries that have signed the Berne Convention and follow the Rule of the Shorter Term." (Am. Compl. ¶ 45). By its very terms, this relief presupposes that this Court can determine the parties' rights across a large segment of the globe simply by reading Berne. That is incorrect.

As an initial matter, the meaning of Berne and its so-called Rule of the Shorter Term is far more complex and nuanced than Plaintiff presents. This is because, as described below, each Berne signatory applies its own interpretation of Berne and the Rule of the Shorter Term. Accordingly, it is inaccurate to contend, as Plaintiff does here, that every country that "follow[s] the Rule of the Shorter Term" would find the Salinger Stories in the public domain. Indeed, it is impossible to determine how each and every one of the 168 Berne member states might apply the Rule of the Shorter Term – or not – to the Salinger Stories simply by reference to the language of Berne, as Plaintiff contends. Rather, the Court would need to make that determination separately for each country according to varied and complex principles that each country may adopt or not.

i.  **The Rule of the Shorter Term should not apply to a failure to follow formalities.**

In particular, while a country may follow the Rule of the Shorter Term as a general matter, it is far from clear that such a country would apply that Rule to the Salinger Stories, which fell into the public domain here solely due to a failure to follow old "formalities" under U.S. copyright law that are now defunct and prohibited under Berne. As one commentator has explained, "[A] Berne country in which protection exists cannot cease protecting a work because protection has lapsed in the country of origin due to failure to fulfill formalities. Accordingly, if a work is unprotected in its country of origin due to failure to fulfill copyright formalities, such

11

work must nonetheless be protected in other Berne countries." Lisa M. Brownlee, *Recent Changes in the Duration of Copyright in the United States and European Union: Procedure and Policy*, 6 FORDHAM INTELL. PROP. MEDIA & ENT. L.J. 579, 594 (1996).[3]

Both the Italian and German courts follow this approach. In Italy, this was established by the case of *Warner Bros. Entm't Italia s.p.a. v. Passworld s.r.l.*, Judgment of the Court of First Instance of Milan, Feb. 6, 2013, *Annali italiani di diritto d'autore, della culture e dello spettacolo* (2013), 901 (Arato Decl. Ex. 2). The *Warner Bros.* case concerned U.S. works that were governed by the 1909 Copyright Act. Those works were not registered for a renewal term after their initial 28-year term and thus fell into the public domain in the United States once that initial term ended. *Id.* at 904. Nevertheless, the Milan Court held that:

> [C]opyright protection is not bound by compliance with the particular formalities or the existence or not of protection in the work's country of origin, with importance only being given to the legislation in the country in which protection is requested. Therefore, stating that, with respect to the inspiring rationale of the principles set out in the Berne Convention, *falling into the public domain in the country of origin of the work due to the failure to comply with mere formalities (as in this case) cannot represent an obstacle to the application of protection under the Convention* (all the more so now that American regulations have increased the term of protection for the rights in question to 95 years after the death of the author). In other words: if in the country of origin a work has actually fallen into the public domain due only to the fact that the formalities of renewal required by current national law at the time and then abolished were not fulfilled, such that, in the lack of such formality (and of such noncompliance) the work would still be susceptible to having protection, with the term of protection (subsequently) specified by national regulations not having expired, *the work would not fall into the public domain under the Berne Convention . . . .*

*Id.* at 910-11 (emphasis added).

---

[3] Berne's prohibition against conditioning copyright protection on the observance of formalities is one of the Convention's most important hallmarks. As the World Intellectual Property Organization, a leading authority on Berne, has explained, "If protection depends on observing any such formality, it is a breach of the Convention." WIPO, *Guide to the Berne Convention for the Protection of Literary and Artistic Works (Paris Act, 1971)* 33 (1978), *available at* http://www.wipo.int/freepublications/en/; Orrin G. Hatch, *Better Late Than Never: Implementation of the 1886 Berne Convention*, 22 CORNELL INT'L L.J. 171, 192 (1989) (Berne "prohibits signatories from creating 'formalities' which might pose obstacles for the 'enjoyment or exercise' of rights of authors seeking copyright protection."); *see also* 17 U.S.C. § 104A(h)(6)(C)(i) (restoring foreign works that were in the public domain due to failure to comply with renewal "formality" under U.S. law).

Just as in *Warner Bros.*, Plaintiff alleges that each of the Salinger Stories enjoyed a term of protection for 28 years and then fell into the public domain in the United States due to a failure to register the works and/or renew their initial terms. (Am. Compl. ¶¶ 13-14, 17-18, 21-22). *Warner Bros.* thus dictates that the Trustees would continue to hold the exclusive rights to the works in Italy, and will continue to do so until 70 years after J.D. Salinger's death (*i.e.*, 2080). The law of Germany is the same. *See* Germ. J. at 11.

### ii. Berne requires an analysis of other treaties and internal laws.

In any event, Plaintiff's requested judgment ignores that, in addition to any protection under Berne, the Trustees also have exclusive rights to the Salinger Stories in foreign countries through other treaties with the United States or under those countries' own copyright laws. As the German Judgment illustrates, a foreign jurisdiction will recognize and protect the Trustees' exclusive rights in the stories if those rights are conferred under *any* treaty between that country and the United States. Indeed, *Berne expressly states that it does not supplant or foreclose any pre-existing or subsequent bilateral treaties between its members "in so far as such agreements grant to authors more extensive rights than those granted by the Convention, or contain other provisions not contrary to this Convention."* Art. 20.

Even Berne's "Rule of the Shorter Term" – the basis for Plaintiff's claim – permits signatories to provide a longer term than exists in the country of origin; it does not mandate that all signatories adhere to the shorter term: "In any case, the term shall be governed by the legislation of the country where protection is claimed; however, *unless the legislation of that country otherwise provides*, the term shall not exceed the term fixed in the country of origin of the work." Art. 7(8) (emphasis added).

Germany, for example, has a pre-existing bilateral treaty and such "other" legislation – namely, the 1892 treaty between it and the United States upon which the German Judgment

relies, and a provision of the German Copyright Act that affords foreign nationals the protection of that treaty. *See* Germ. J. at 10. Accordingly, as noted above, the German Court recently determined that the Trustees continue in Germany to own the exclusive copyright to the Salinger Stories under that 1892 treaty. *Id.* at 10-11.

The German Judgment thus upends Plaintiff's conclusion that the stories are in the public domain in any country that adheres to Berne and applies the Rule of the Shorter Term. To the contrary, although Germany both adheres to Berne *and* applies the Rule of the Shorter Term, Article 20 of Berne and the German Copyright Act directed the German Court to look to its pre-existing and subsequent treaties to find that the Salinger Stories were *not* in the public domain in that country. *Id.* at 10-11. Italy has a similar treaty affording protection over American works regardless of their public domain status in the United States. *See Warner Bros.*, at 909-10 (citing that treaty and Article 20 of Berne). In Italy too, therefore, the Trustees continue to own the exclusive rights to the Salinger Stories under a pre-existing treaty and Article 20 of Berne, even though, like Germany, Italy is a signatory to Berne and follows the Rule of the Shorter Term.

The Italian Court in *Warner Bros.* recognized yet another reason that works may be protected throughout Europe even if they are in the public domain in the United States. According to the Italian Court, as long as a work is protected in one member of the European Union, the work is entitled to "uniform protection in the *entire European Union*" pursuant to a 2006 Directive. *Id.* at 912 (emphasis added). The Italian Court found that the works before it were protected in Germany and applied the above uniform protection rule as an alternative ground to protecting the works in Italy. *Id.* Likewise here, the German Court's Judgment that the Trustees own the exclusive rights to the Salinger Stories in Germany until 2080 means that the Trustees are entitled to that same term of protection throughout the European Union.

14

Plaintiff does not specify which of Berne's 168 signatories "follow the Rule of the

Shorter Term." (Am. Compl. ¶ 45). As the two examples of Germany and Italy indicate,

however, to properly determine the Trustees' and Plaintiff's respective rights in any country (at

least outside the European Union, given the German Judgment), one would need to examine that

country's treaties and internal legislation. Simply determining that a country adheres to Berne

and follows the Rule of the Shorter Term does not end the inquiry. Germ. J. at 10-11. Yet

Plaintiff's requested declaration focuses only on Berne and stops well short of the far more

extensive legal analysis required to settle the parties' dispute.

For this reason, this Court should decline to hear Plaintiff's claim. *See, e.g., Williams v.*

*BASF Catalysts LLC*, 765 F.3d 306, 327 (3d Cir. 2014) ("[A] litigant may not use a declaratory-

judgment action to obtain piecemeal adjudication of defenses that would not finally and

conclusively resolve the underlying controversy." (internal quotation marks omitted)); *Bell*

*Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1299 (10th Cir. 2004) (district

court correctly dismissed declaratory judgment claim because "any declaratory judgment

rendered in this litigation would not settle the controversy").[4]

### B. The Legal Issues in Dispute Should Be Resolved by Foreign Courts.

Indeed, courts have cautioned that a district court must exercise its discretion to award

declaratory judgments "with great care when foreign law and actions are involved." *Crane v.*

*Poetic Prods. Ltd.*, 593 F. Supp. 2d 585, 598 (S.D.N.Y.), *aff'd*, 351 Fed. App'x 516 (2d Cir.

2009). If this Court were to embark on assessing every Berne signatory's interpretation of Berne

---

[4]  It is also far from certain that each of those countries' courts would honor a declaratory judgment by this Court.
*See Crane v. Poetic Products Ltd.*, 351 F. App'x 516, 518 (2d Cir. 2009) ("[T]he courts of one sovereign are not
strictly bound to honor judgments of the courts of another."); *Buettgen v. Harless*, 263 F.R.D. 378, 382 (N.D. Tex.
2009) (noting that a U.S. court judgment may not be binding in Switzerland); *Gordon & Breach Sci. Publishers S.A.*
*v. Am. Inst. of Physics*, 905 F. Supp. 169, 179 (S.D.N.Y. 1995) ("[N]either Switzerland nor Germany recognizes the
doctrine of collateral estoppel and thus would not recognize a judgment rendered by an American court.").
Accordingly, Plaintiff's requested relief may – as a practical matter – have no effect, and could needlessly waste
both the Court's and the parties' resources, another reason this Court should decline to hear this dispute.

to determine how that country might apply the Rule of the Shorter Term, it will create the

potential for a judgment that is inconsistent with the decisions of those countries' own courts.

While this Court is capable of applying foreign law, there is no compulsion for it do so here, and

foreign courts are just as capable, if not more so, at applying their own countries' laws. To avoid

increasing the "friction" between this Court and other courts, the Court should dismiss Plaintiff's

claim. *See, e.g.*, *Crane*, 351 F. App'x at 518 (proper for court to cite "international comity" as a

ground for dismissing declaratory judgment claim); *Therapearl, LLC v. Rapid Aid Ltd.*, No.

CCB-13-2792, 2014 WL 4794905, at *7 (D. Md. Sept. 25, 2014) (finding "good reason" for

court "to exercise its discretionary authority to decline to issue . . . declaratory judgment"

because it would raise concerns "friction between sovereign legal systems and of comity"

(internal quotation marks omitted)).

Notably, Plaintiff brought this action only after the Trustees had initiated legal

proceedings in Germany and had sent a formal cease and desist letter to Plaintiff's sub-publisher

in Italy. The Trustees have since commenced legal proceedings in Italy as well. *See* Court of

First Instance of Milan, Case No. 43500/2015 (Tribunale di Milano, R.G. 43500/2015). The

timing of Plaintiff's Compliant suggests strongly that Plaintiff is seeking to obtain an omnibus

ruling from this Court "as a device for 'procedural fencing,'" which also weighs in favor of

dismissal. *See Leather Form S.R.L. v. Knoll, Inc.*, 205 F. App'x 861, 864 (2d Cir. 2006) (district

court correctly dismissed declaratory judgment claim concerning international rights because the

action was "nothing but an attempt to circumvent the holdings and jurisdictions of the German

courts"); *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995)

(district court properly dismissed declaratory judgment action that was filed just before

defendant filed its own action in state court); *EMC Corp. v. Roland*, 916 F. Supp. 51, 54 (D.

Mass. 1996) (dismissing declaratory judgment action filed just before defendant filed action in another forum because "[t]he Declaratory Judgment Act was not designed to countenance such procedural manipulation of forums and actions" (internal quotation marks omitted)).

## II.   PLAINTIFF FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE UNDER TENNESSEE LAW.[5]

Plaintiff's interference claim pleads two different theories of interference under Tennessee law – interference with contract and with business relationships.  Each fails as a matter of law.

### A. Plaintiff Fails to Allege Facts Supporting a Claim of Tortious Interference with Contract.

Plaintiff fails to state a claim for tortious interference with contract.  The Amended Complaint fails to adequately allege that Plaintiff had a contract; that any third party breached such a contract; or that the Trustees acted tortiously.  To state a claim for tortious interference with contract under Tennessee common law or Tennessee Code § 47-50-109, a plaintiff must allege that "(1) a legal contract existed; (2) defendant was aware of the contract; (3) defendant intended to induce a contractual breach; (4) defendant acted with malice; (5) the contract was breached; (6) the breach was a proximate result of defendant's conduct; and (7) plaintiff was injured by the breach."  *Bolton v. Morgan*, No. 05-2315 MA/P, 2006 WL 840422, at *2 (W.D. Tenn. Mar. 29, 2006).

Plaintiff fails to allege the first element of its claim – establishing an actionable contract – because Plaintiff does not allege any specific contracts, contractual terms or even the parties

---

[5] Plaintiff asserts its tortious interference claim under Tennessee Common Law and Tennessee Code § 47-50-109. (Am. Compl. ¶¶ 50-56).  For purposes of this motion, the Trustees assume that Tennessee – as the forum of Plaintiff's alleged injuries – supplies the governing law for Plaintiff's tort claims, and thus respectfully submit that a full choice-of-law analysis is not warranted.  *See Michnovez v. Blair, LLC*, 795 F. Supp. 2d 177, 185 (D.N.H. 2011) (court need not undertake a choice-of-law analysis where both parties agree on the law that governs and "'there is at least a reasonable relation between the dispute and the forum whose law has been selected by the parties'" (quoting *Platten v. HG Berm. Exempted Ltd.*, 437 F.3d 118, 127 n.5 (1st Cir. 2006))).

involved. *See Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 754 (6th Cir. 2014) (dismissing claim because plaintiff "merely assert[ed] that a contract exists" but did not adequately identify the supposed contract). *See also Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606 (HBP), 2006 WL 2320544, at *12 (S.D.N.Y. Aug. 10, 2006) (dismissing claim because, among other things, plaintiff failed to allege "the relevant terms of the contracts").

Plaintiff also fails to allege that the supposed contracts were actually breached. *See Winfree v. Educators Credit Union*, 900 S.W.2d 285, 290 (Tenn. Ct. App. 1995) ("A fundamental requirement in sustaining an action for procurement of the breach of a contract is an actual breach."). Instead, Plaintiff attempts to evade that element by alleging that "several parties breached *and/or terminated their contracts* with Devault-Graves." (Am. Compl. ¶ 54 (emphasis added)). Plaintiff's use of "and/or" fails *Iqbal*'s plausibility standard because it allows the possibility that Plaintiff's supposed counterparties only terminated – and did not breach – their contracts. *See Patterson v. Novartis Pharm. Corp.*, 451 F. App'x 495, 497 (6th Cir. 2011) (plaintiff failed to state a claim under *Iqbal* by alleging two events connected by "and/or," which made it "entirely plausible" that only the second, non-actionable event occurred).

The distinction is critical, and fatal to Plaintiff's claim. As Plaintiff's competitor in the distribution of J.D. Salinger's works, the Trustees cannot be liable for tortious interference with contract for allegedly causing a third party to legally terminate an agreement. *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 637 (M.D. Tenn. 2006) (where plaintiffs "acknowledge[d] that this contract was terminated in accordance with its own terms, not breached . . . [defendant's] interference with that arrangement cannot give rise to a claim for inducement of breach of contract"); *Smith v. Rosenthal Collins Group, LLC*, No. 03-2360 M1/AN, 2005 WL 2210208, at *10 (W.D. Tenn. Sept. 10, 2005) (dismissing tortious interference

with contract claim based on alleged interference with an at-will contract); *Polk & Sullivan, Inc. v. United Cities Gas Co.*, 783 S.W.2d 538, 543-44 (Tenn. 1989) (claim properly dismissed because it was based on the termination of a contract terminable at will); *Winfree*, 900 S.W.2d at 290 (same).[6]  Plaintiff's "and/or" pleading tactic thus requires dismissal of its claim.

Finally, even if Plaintiff had adequately alleged the existence and actual breach of a contract, Plaintiff still fails to allege that the Trustees did anything actionable.  There is no liability for tortious interference with contract unless the Trustees acted with "malice" – that is, in "willful violation of a known right." *Marshall Motor Homes Int'l, Inc. v. Newmar Corp.*, No. 3:01-CV-397, 2003 WL 23333579, at *30 (E.D. Tenn. Dec. 5, 2003).

Malice does not exist, however, when a defendant notifies a third party of its belief that the plaintiff lacks the legal authority to grant the rights it purported to grant in its contract with that third party. *See id.* (defendant acted without malice in informing plaintiff's contractual counterparty that plaintiff "lacked the authority to grant exclusive dealership rights" to a vehicle). *See also East Penn Sanitation, Inc. v. Grinnell Haulers, Inc.*, 294 N.J. Super. 158, 181 (App. Div. 1996) (no malice where defendant merely communicated its opinion regarding plaintiff's legal inability to perform a contract).

Even if a defendant communicates to a third party its legal view that the plaintiff was violating its rights, the defendant does not act maliciously as long as the defendant "would have

---

[6] To the extent Plaintiff attempts to argue, as it did previously, that the Trustees do not compete with Devault-Graves because they have not published the Salinger Stories, Plaintiff views the competitor's privilege too narrowly. *See Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 623 (10th Cir. 1995) (industrial hygiene consulting company and operator of nuclear facility were "competitors" in the labor market because the privilege "applies when the parties compete in any way"); Restatement (Second) for Torts § 768 cmt. c (privilege applies "to the indirect competition between a manufacturer whose goods are marketed by independent retailers and a retailer who markets the competing goods of another manufacturer").  Because the Trustees earn income, indirectly, from the sale of J.D. Salinger's works, they "compete" in the marketplace for J.D. Salinger works as a whole, even if they have no present intention of authorizing the re-publication of the Salinger Stories either here or abroad.  For example, J.D. Salinger licensed other short stories to publishers for distribution abroad (*see* Arato Decl. Ex. 3), and Plaintiff's exploitation of its work could very well hamper the demand for these authorized works or damage the author's reputation, given J.D. Salinger's expressed view that the stories he chose not to re-publish were lesser, immature works of his.

been justified in litigating the question." *Riggs v. Royal Beauty Supply, Inc.*, 879 S.W.2d 848, 852 (Tenn. Ct. App. 1994). *See also Tsiatsios v. Anheuser-Busch, Inc.*, Civ. No. 07-CV-003-JL, 2009 WL 114557, at *5 (D.N.H. Jan. 16, 2009) ("[C]ertain conduct, which would otherwise amount to tortious interference with contractual relations, is justified where [a defendant] has acted to protect its own legitimate interests.").

Under these standards, the Trustees' alleged communications with Plaintiff's foreign publishers and agents cannot, as a matter of law, have been with malice.  Plaintiff concedes that the Trustees were trying to protect their "purported foreign copyrights in the [Salinger] Stories," and alleges that the Trustees told foreign publishers and agents that publication of *Three Early Stories* violates those rights and "threatened legal action." (Am. Compl. ¶ 39).

Courts throughout the country regularly uphold the rights of parties to protect their potential intellectual property rights in this manner, even if they are ultimately mistaken. *See*, *e.g.*, *P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 232 F. Supp. 2d 220, 225 (S.D.N.Y. 2002) (cease-and-desist letters asserting infringement not actionable as tortious interference with contract); *Kemp v. Tyson Foods, Inc.*, No. CIV 96-173 JRT/RLE, 2001 WL 391552, at *7 (D. Minn. Mar. 31, 2001) (same); *Montgomery Cnty. Ass'n of Realtors v. Realty Photo Master Corp.*, 878 F. Supp. 804, 818 (D. Md. 1995) (same); *Knickerbocker Toy Co. v. Winterbrook Corp.*, 554 F. Supp. 1309, 1323 (D.N.H. 1982) (same). *See also Donovan v. Digital Equip. Corp.*, 883 F. Supp. 775, 788 (D.N.H. 1994) (not tortious interference for a defendant to "assert[] in good faith a legally protected interest of his own or threaten[] in good faith to protect the interest by appropriate means" (internal quotation marks omitted)).

In any event, as the two examples that Plaintiff attached to its Amended Complaint make clear, the Trustees at best communicated to select others an overall legal position, and invited

them to provide a legal basis why the publication of the *Three Early Stories* overseas would not violate the Trustees' rights in any applicable territory.  (Am. Compl. Exs. E & F).  One was from the Trustees' attorneys and invited a dialogue with Plaintiff and its foreign agent about their analysis of foreign laws.  (*Id.* Ex. F).  The other states that "there is good reason to believe that all three stories are still protected by copyright in Italy."  (*Id.* Ex. E).  As set forth above, that statement is true under Italian law.  Such communications were therefore justified, as the analyses under German and Italian law demonstrate.  At bottom, the thrust of the Trustees' alleged communications was to advise Plaintiff's foreign publishers and agents to consult with legal counsel regarding this complex area of copyright law, which, as a matter of law, is not tortious conduct.

### B.  Plaintiff Fails to Allege Facts Supporting a Claim of Tortious Interference with Business Relationships.

The standard for pleading interference with business relationships under Tennessee law is even more stringent than for interference with contract and requires, in addition to the other elements, that the plaintiff plead that the defendants acted with an "improper motive" or with "improper means."  *Bolton*, 2006 WL 840422, at *5.  Plaintiff cannot state this claim either.

First, the "improper motive" prong is unavailable to Plaintiff because the Trustees and Plaintiff are competitors with respect to the publication of J.D. Salinger's works, *Norvell Skin Solutions, LLC v. Solaire Pty Ltd.*, No. 2:13-CV-0117, 2014 WL 3353246, at *5 (M.D. Tenn. July 8, 2014), and it is thus impossible to separate the Trustees' motive of protecting their own rights from their supposed interest in halting Plaintiff's sales.  *See Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 183 (Tenn. Ct. App. 2007) (the privilege exists because "separating the interest in improving one's own business and taking business away from the competitor would seem problematic").

21

In any event, Plaintiff fails to allege an actionable improper motive or any facts from which an improper motive may be inferred.  The Amended Complaint alleges that the Trustees acted "intentionally, maliciously, and recklessly."  (Am. Compl. ¶ 53).  But nothing about allegedly intending to do an act or allegedly doing it recklessly establishes improper motive, which requires that the defendant's "'predominant purpose was to injure the plaintiff.'"  *Bolton*, 2006 WL 840422, at *5 (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 n.5 (Tenn. 2002)).  And "allegations of mere 'malice' are not sufficient to state a claim for" this tort.  *Freeman Mgmt.*, 461 F. Supp. 2d at 641.

As discussed above, Plaintiff has failed to adequately allege that the Trustees acted maliciously, rather than to protect their declared intellectual property rights in the Salinger Stories.  Indeed, Plaintiff's concession that the Trustees "assert[] that publication of *Three Early Stories* violates Defendants' purported foreign copyrights" and that publication in at least Italy "would require Defendants' permission" (*see* Am. Compl. ¶¶ 39-40), forecloses any inference that the Trustees' "predominant purpose" was to harm Plaintiff.  *See Freeman Mgmt.*, 461 F. Supp. 2d at 641 ("[T]he only reasonable inference to be drawn from the Amended Complaint is that [defendant] was motivated purely by its own business interests, in the pursuit of which it caused incidental harm to Plaintiffs.").[7]

Finally, a communication to protect one's intellectual property rights – as the Trustees are alleged to have done here – does not qualify as "improper means," which generally means engaging in an independent wrong or "other overtly unethical conduct."  *Id. See, e.g., Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.*, No. 13-cv-3767 (NSR), 2014 WL 4772340, at *17

---

[7] *See also Thome v. Alexander & Louisa Calder Found.*, 70 A.D.3d 88, 108, 890 N.Y.S.2d 16, 30 (1st Dep't 2009) (dismissing tortious interference claim because, "by plaintiff's own theory of the case, defendants acted with the intent of benefitting themselves"); *Out of Box Promotions, LLC v. Koschitzki*, 55 A.D.3d 575, 577, 866 N.Y.S.2d 677, 680 (2d Dep't 2008) (tortious interference claim failed to allege improper purpose where complaint established that defendants "were motivated, at least in part, by economic self-interest").

(S.D.N.Y. Apr. 1, 2014) (telling others that plaintiff is infringing defendant's intellectual property is not "improper means"); *Adidas Am., Inc. v. Herbalife Int'l, Inc.*, No. CV 09-661-MO, 2011 WL 3359987, at *3 (D. Or. Aug. 1, 2011) ("Advancing one's legitimate interest is not wrongful by statute, common law, or an established standard of [the relevant] profession" and is not "improper means"); *Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997) (enforcing patent rights not "improper means" where defendant had "objectively reasonable" basis for doing so); *Roberts v. Gen. Motors Corp.*, 138 N.H. 532, 541, 643 A.2d 956, 961 (1994) (no tortious interference if defendant "asserted a legally protected interest that [it] believed may have been impaired or destroyed" by the plaintiff and third party).

## III.   PLAINTIFF FAILS TO STATE A CLAIM FOR A DECLARATION REGARDING THE TRUSTEES' OWNERSHIP.

Plaintiff fails to support its alternative request for a declaration that "the Trust does not own the copyrights in and to the Underlying Stories," (Am. Compl. ¶ 49), because it fails to allege any plausible basis to question the Trustees' ownership. Plaintiff premises its request on the fact that J.D. Salinger recorded one written assignment document with the U.S. Copyright Office during his lifetime and that assignment does not cover the Salinger Stories and deals with other works. (*See id.* ¶¶ 29-31). That is evidence of nothing. The act of recording an assignment document is purely voluntary and is not needed to validate a pre-existing assignment. *See* 17 U.S.C. § 204(a) (only requirements for a valid assignment are that it be in writing and signed); *id.* § 205(a) ("Any transfer of copyright ownership . . . may be recorded in the Copyright Office . . . ."). Plaintiff provides no legitimate basis for its conclusory allegation that J.D. Salinger did not assign the Salinger Stories to the Trust simply because no assignment had previously been recorded. (*See* Am. Compl. ¶ 32).

In fact, such an assignment *does* exist; it was found valid by the German Court (*see*

Germ. J. at 3, 12) and the Trustees have recorded it with the U.S. Copyright Office (*see* Arato

Decl. Ex. 3) – matters of which this Court may judicially notice and evaluate on this motion to

dismiss.  *See, e.g., Duffey v. Twentieth Century Fox Film Corp.*, 14 F. Supp. 3d 120, 124 n.3

(S.D.N.Y. 2014).  *See also Esoterix Genetic Labs. LLC v. Qiagen Inc.*, No. 14-CV-13228-ADB,

--- F. Supp. 3d ---, 2015 WL 5680331, at *1 n.1 (D. Mass. Sept. 25, 2015); *supra* at 9.

As that document makes clear, J.D. Salinger assigned *all* of his intellectual property

rights, domestic and worldwide, to the Trustees, just as the German Court recognized.  All of this

was made known to Plaintiff in the course of the briefing in Tennessee, yet Plaintiff inexplicably

persists with its claim.  *See* ECF Doc. No. 15-1 at 20; ECF Doc. No. 19 at 10; ECF Doc. No. 19-

1 Ex. 1.

Because Plaintiff's "alternative" claim is both implausible and meritless, it should be

dismissed.

## CONCLUSION

For the foregoing reasons, the Trustees respectfully request that the Court dismiss the

Amended Complaint in its entirety and with prejudice.

Dated: December 9, 2015

> Respectfully submitted,
>
> RATH, YOUNG AND PIGNATELLI, P.C.
>
>
> By: /s/  Michael S. Lewis (NH Bar # 16466)
> 1 Capital Plaza
> Concord, New Hampshire  03301
> Phone:  (603) 226-2600
> msl@rathlaw.com
>
> Cynthia S. Arato
> Daniel J. O'Neill
> SHAPIRO ARATO LLP
> 500 Fifth Avenue, 40th Floor
> New York, New York 10110
> Telephone:  (212) 257-4880
> carato@shapiroarato.com
> doneill@shapiroarato.com
> *Pro hac vice applications pending*
>
> *Attorneys for Defendants*

## CERTFIFICATE OF SERVICE

I hereby certify that on December 9, 2015, I caused a copy of the motion to dismiss, this accompanying supporting memorandum and exhibits, as well as this Certificate of Service to be served upon the following individuals as indicated below by virtue of transmitting the same to the court via its ECF filing system to:

> Taylor A. Cates
> Charles Silvestri Higgins
> BUNCH, PORTER & JOHNSON, PLLC
> 130 North Court Ave.
> Memphis, TN 38103
> Phone: 901-524-5000
> tacates@bpjlaw.com
> chiggins@bpjlaw.com
>
> *Pro Hac Vice Attorneys to Be Noticed*

December 9, 2015          By: /s/ Michael S. Lewis (N.H. Bar # 16466)