# EXHIBIT 1-T



# DayTranslations.com
## Certificate of Accuracy

**Martin Peake**
Translator/Interpreter

Translated document: **Legal Proceedings: J.D. Salinger Literary Trust versus Piper Verlag GmbH**

As a translator for Day Translations, Inc., I, Martin Peake, declare that I am a bilingual translator who is thoroughly familiar with the German and English languages. I have translated the attached document to the best of my knowledge from German into English and the English text is an accurate and true translation of the original document presented to the best of my knowledge and belief.

Signed on May 20th , 2015

**Martin Peake**

Professional Translator for Day Translations, Inc.

---

Day Translations, Inc. is a member in good standing of the American Translators Association for the year 2015



American
Translators
Association

***ATA member # 243874***

# Day Translations.com
## Certified Translation
www.daytranslations.com

415 Madison Ave., 15th Floor
New York City, NY 10017
Toll Free - 1-800-969-6853
Fax — 1-800-856-2759

MEMBER
**ata**
AMERICAN
TRANSLATORS
ASSOCIATION

NAJIT
Official Member of The
National Association of
Judicial Interpreters
and Translators



| Received |
| 09 April 2015 |
| MORRISON / FOERSTER |

# Regional Court of Berlin
# In the name of the people

**Judgment**

Reference Number: 15 0 62/15        proclaimed on:      31.03.2015
                                                        Großmann
                                                        Clerk of the Court

In the process of the preliminary injunction
1.  Mr. Matthew R. Salinger, representing
    "The J.D. Salinger Literary Trust",
    Suite #202,
    Trustee, JDLT, 5 River Road, Wilton, CT 06897,
    U.S.A.
2.  Ms Colleen M. Salinger, representing "The J.D. Salinger Literary Trust"
    Trustee, JDLT, 301 Lang Road, Cornish, NH 03745,
    USA,

                                            Plaintiff,

Legal counsel: Law firm Morrison Foester,
Potsdamer Platz 1, 10785 Berlin

Versues

Piper Verlag GmbH,
represented by the managing directors

Marcel Hartges, Hans-Joachim Harmann
and Christian Mathias Schumacher-Gebler,

Georgenstraße 4, 80799 München.
                                Defendant

Legal Counsel: Law firm
Senfft Kersten Nabert van Eendenburg
Schlüterstrasse 6, 20146 Hamburg

ZP 550

2

the 15th Chamber of the Regional Court of Berlin, – Mitte, Littenstrasse 12-17, 10179 Berlin, composed by the Presiding Judge Meyer-Schäfer and the Judges Schaber and Raddatz, based on the oral hearing of March 10, 2015,

h a s f o u n d   t o   b e   l a w f u l :

1. The Defendant is **prohibited**, in order to avoid a fine of up to EUR 250,000, or alternatively, an arrest for disobedience of court orders, or confinement in prison of up to six months,

from reproducing and/or having reproduced, from distributing and/or having distributed, from making available and/or having made available to the public, in Germany, a German translation of the works "The Young Folks," "Go See Eddie" and "Once a Week Won't Kill You" by J.D. Salinger,

especially as a printed edition in the book "Die jungen Leute – Drei Stories" (ISBN: 978-3-492-05698-4), which the Defendant is prohibited from reproducing and/or having reproduced, from distributing and/or having distributed; as well as in the form of an e-book by the same name (ISBN: 978-3-492-97053-2), which the Defendant is prohibited from reproducing and/or having reproduced, from making available and/or having made available to the public.

2. The Defendant is convicted to recall any reproductions of the translations already delivered to the bookstores pursuant to n. 1.

3. Composition of costs is established.

### Facts

The Parties are in dispute about the entitlement of the Defendant to utilize texts by the author J. D. Salinger, who died in January 2010, in January 2010, in a German-language book.

ZP 550

Jerome David Salinger is an American author of literary works. He last published a literary text in 1965. He was concerned to remain remote from public attention as a person and in his works. This dispute is about three short stories published in the 1940s, namely "The Young Folks", "Go See Eddie" and "Once a Week Won't Kill You", which J. D. Salinger wrote in the 1940s (referred to hereafter as "the Stories"). These works were each published on one occasion in 1940, i.e. 1944 in US-American magazines (Exhibit Ast 3). At the time, two of the stories were not recorded in the register of the US Copyright Office, while one registration was not extended at the end of the copyright term (1968).

J. D. Salinger founded the "J. D. Salinger Literary Trust" on 24 July 2008 as "a means of administrating the literary property (....) together with other such literary property as may be transferred by the Trustor or to other person or persons to the Trustee, as a separate Trust as defined in the terms of this deed" (working translation of the German translation of Exhibit 1, excerpt from the Charter). Until his death, the author had assigned to himself the role of Trustee to the Trust. The Charter states that from such time on, there should, at all times, be two Trustees, whereby J. D. Salinger appointed his spouse and his son Matthew Robert Salinger as Co-Trustees. On 15 October 2008, J. D. Salinger signed an "Assignment of Literary Property"", in which he detailed a comprehensive transfer of rights to the Trustee (Exhibits Ast 4 and Ast 28).

The complainants are the widow of J. D. Salinger and his son; they are both incumbent Trustees of the Trust.

The Defendant is a German publishing house. It announced, by its own admission,    as of November 2014 – on its website (www.piper.de) the publication of a book entitled "J. D. Salinger – Die jungen Leute – Drei Stories" with a translation of the stories into the German language, which was initially intended for publication on 9 March 2015, then for 16 February 2015 (Exhibit Ast 9). The publication of this book was announced on the internet retail platform

www.amazon.de and in Austria and Switzerland (Exhibits Ast 9 - Ast 11). The book was published in a printed version and as an e-book on 16 February 2015, and released on the German market. Neither the author nor the Applicants provided consent.

In its procedural document dated 9 January 2015, the Trust informed the Defendant of its proprietorship to the copyright, that it had granted no consent and shall furthermore reserve all rights to respond (Exhibit Ast 12). In its procedural document of 16 January 2015, the Defendant referred to a license agreement with American rights holders and their assurance to be in possession of all necessary rights; the Defendant stated a primary interest in the dissemination of the book, but also declared a willingness to talk {Exhibit Ast14). The two sides telephoned. In its procedural document dated 5 February 2015, the Applicant served formal notice to the Defendant, but in vain (Exhibits Ast 15 - Ast17).

The publishing rights holder referred to by the Defendant is the US American publishers, the Devault-Graves Agency. It had republished the stories in the United States in the book "Three Early Stories" in July 2014 (Exhibit AG 1). The publisher registered copyright of the publication of these collected texts in the USA. The Parties mutually assume that the stories are in the public domain in the USA. The Applicants see no prerogative to prevent the publishers Devault-Graves Agency and all of their efforts to reach an out-of-court settlement with the Devault-Graves Agency remained in vain.

The Applicants assert that they did not gain any knowledge that the Defendant intended to publish a German translation of the Stories until 21 and 22 December 2014.

As a means of establishing credibility, the complainants refer to the written declaration by the Applicant dated 4 and 5 February 2015 (Exhibits Ast. 2 and Ast 13/Ast 21), by attorney Cynthia S. Arato dated 5 February 2015 (Exhibits Ast 13/Ast 21) and attorney

5

Cynthia S. Arato dated 5 February 2015 (Exhibits Ast 13/Ast 21) and attorney Thomas
S. Csatari dated 24 February 2015 (Exhibit Ast 25)

The complainants are of the opinion: that they, in their capacity as Trustees, are, according to
the Trust Laws enacted in New Hampshire, the owners of the copyright to the Stories. The
claims asserted here should be upheld in their favour based on Sec. et seq. 97 (1), 23 (1)
German Copyright Law, according to which the law of the country for whose protection is
sought should be applicable.

In their application dated 6 February 2015, the complainants petitioned the Court:

> 1.  to prohibit the Defendant on penalty of sanction under law to publish
>     and or/commission the publication of, to exploit and/or commission the
>     exploitation of a German translation of the works "The Young Folks",
>     "Go See Eddie" and "Once a Week Won't Kill You" by J. D. Salinger in
>     Germany, Austria and/or Switzerland,

> in particular to reproduce and/or commission the reproduction thereof,
> to disseminate and/or commission the dissemination thereof in the
> book "Die jungen Leute - Drei Stories" as a printed version (ISBN:
> 978-3-4923-05698-4), and, in the e-book (ISBN: 978-3-492-97053-2)
> of the same name, to refrain from reproducing and/or commissioning
> the reproduction, to make publicly available and/or to commission
> others to make publicly available and/or to advertise or commission
> the advertising for the sale of the translations:

> 2.  To order the Defendant to recall reproduced copies of the translations
>     described under Item 1 already delivered to booksellers and to
>     remove or commission the removal from the Internet of all offers to
>     download the translation as an e-book as described in Item 1.

In the procedural document dated 26 February 2015, the complainants formulated their applications as
follows:

> 1.  To prohibit the Defendant upon penalty of sanction under law to
>     reproduce and/or commission the reproduction of, to disseminate
>     and/or commission the dissemination of, to make publicly available
>     and/or to commission others to make publicly available a German
>     translation of the works "The Young Folks", "Go See Eddie" and
>     "Once a Week Won't Kill You" by J. D. Salinger in Germany, Austria
>     and/or Switzerland,

6

in particular in the book "Die jungen Leute - Drei Stories" as a printed edition
 (ISBN: 978-3-4923-05698-4), and in the e-book (ISBN: 978·3·492-97053-2) of the same name, to refrain from reproducing and/or commissioning the reproduction, to make publicly available and/or to commission others to make publicly available;

2. To order the Defendant to remove the publication of the German translation of the works "The Young Folks", "Go See Eddie" and "Once a Week Won't Kill You" by J. D. Salinger.

3. To order the Defendant to recall reproduced copies of the translations described under Item 1 already delivered to booksellers and to remove or commission the removal from the Internet of all offers to download the translation as an e-book as described in Item 1.

 At the hearing, the complainants, having withdrawn their applications, submitted the following applications:

1. To prohibit the Defendant upon penalty of sanction under law to reproduce and/or commission the reproduction of, to disseminate and/or commission the dissemination of, to make publicly available and/or to commission others to make publicly available in Germany a German translation of the works "The Young Folks", "Go See Eddie" and "Once a Week Won't Kill You" by J. D. Salinger,

in particular in the book "Die jungen Leute - Drei Stories" as a printed version (ISBN: 978-3-4923-056984), and, in the e-book (ISBN: 978·3·492-97053-2) of the same name, to refrain from reproducing and/or commissioning the reproduction, to make publicly available and/or to commission others to make publicly available;

2. (Deleted)

3. To order the Defendant on penalty of sanction under law to recall reproduced copies of the translations described under Item 1 already delivered to booksellers and to remove or commission the removal from the Internet of all offers to download the translation as an e-book as described in Item 1.

The Defendant petitions the court

To reject the application for issue of an injunction,

alternatively,

to restrict the injunction to such copies as have not yet been printed and bound.

The Defendant is of the opinion that there are no good grounds for an injunction as the complainants had, for a considerable period, been aware of the intended publication, but that they had intentionally waited to enforce claims to a cease and desist order until the book had already been produced. The Defendant rejects the claim to entitlement in its entirety.

With respect to the other details of respective presentation of arguments, reference is made here to the content of the procedural documents (including the associated caveat - 15 AR 28/1.5 - dated 6 February 2015) and appendices.

The Parties agreed in the hearing before court a settlement with mutual reservation of revocation until 11 March 2015. The complainants revoked this settlement in a procedural document received by the court on 11 March 2015.

8

**Reasons**

No. this revocation of the settlement, the court was asked to decide on the issue of an injunction based on the hearing before court , Sec. et seq. 936, 921 (1) ZPO (Code of Civil Procedure).

The application as submitted in its most recent version is admissible and well-founded.

The application is subject to the jurisdiction of German courts. It refers to a person resident in Germany with a German court of jurisdiction who in the assertion of the Applicant did infringe existing copyrights upheld in Germany (cf. Regional Court of Munich 1 - 7 O 11335/00 – ruling dated 24 August 2000, ZUM-RD 2002, 21 ff.).

The Regional Court of Berlin is internationally and locally competent. The application refers to copyright infringements by a Defendant operating in Germany, thus to illegal actions committed in Germany. The international jurisdiction of German courts is established in Sec. 32 German Code of Civil Procedure. The same statute establishes the local jurisdiction of the Regional Court of Berlin. The disputed book is, as intended, also disseminated and made publicly available in Berlin. Although there are no indications that the book is also reproduced in Berlin, this action is, however, considered preparation in the interests of providing effective, uniform legal protection of the local jurisdiction at the place of commercial exploitation.

The complainants are entitled to a claim for injunctive relief against the Defendant.

German law is to be applied to the case. The Applicants seek copyright protection for Germany. The question of whether claims exist in the case of infringement of a copyright must, in principle, be answered according to the laws of the country of protection, hence the state

in whose territory the protection is being sought (BGH - 1 ZR 49/13 -, decision of February 26, 2014 - Tarzan).

Thus the question of whether the work is entitled to protection is determined according to German law. The Applicants did not enable the Court to perform this examination, which must be carried out ex officio, because they did not submit the work (compare Schulze in Dreier/Schulze, UrhG, 4th edition 2013, Sec. 2, margin no. 70.). The decision about the protectability is also not subject to the parties' disposition. Their shared view that they should not question the protectability of the work can also be taken as an indication for sufficient individuality; since the author is also a recognized writer, the copyright protectability of his three stories as a literary work within the meaning of Sec. 2 para. 1 no. 1 UrhG must be assumed.

For this work, the protection period is still in force in Germany. The duration of protection must also be judged according to German law.

Invoking Sec. 121 (1) sentence 2 German Copyright Law is in conflict with the fact that the three Stories were published in the USA over 30 days previously, on first occasion in the 1940s and then in July 2014. Sec. 121 (1) sentence German Copyright Law considers that a translation of work by its nature reproduces the original work and thus equates the translation of a work with the original work itself, (Dreier in Dreier/Schulze, German Copyright Law, 4th edition 2013 , Sec.121, par. 3; Wandtke/Bullinger/v. Weiser, UrhR, 4th edition 2014, Sec. 121, par. 2). However, this applies only with the same limitation as described in Sec. 121 (1) sentence 1 German Copyright Law, namely that the work or a translation thereof must not already have been published (here: the translation) within the jurisdiction of German Copyright Law outside of this territory over 30 days prior hereto. The work shall not be considered published for the first time (or within the 30-day limitation period) within the jurisdiction of German Copyright Law insofar as it has been published here for the first time as a German translation, but has otherwise been published in the original language elsewhere. Here, the reasoning is that while the translation is merely equated with the original work, it does not possess any independence in addition to the work. There is an exception designed to protect moral rights as described in Sec. 12 - 14 German Copyright Law,

which foreign nationals are entitled to invoke according to Sec. 121 (6) German Copyright Law with respect to all of their works, even insofar as the requirements defined in sections 1 to 5 Sec. 121 German Copyright Law are not satisfied (cf. Dreier in Dreier/Schulze, German Copyright Law, 4th edition 2013, Sec. 121, par. 19). But in the case at hand this is no longer applicable since the withdrawal of the application No. 2.

Rather, for the copyright protection of the Applicant, the important thing is the content of the treaties, Sec. 121 para. 4 sent. 1 German Copyright Act (UrhG).

According to Article 1 of the German-American treaty of 1892, which still remains in force, the citizens of the USA should in the German Reich enjoy the protection of the works of literature against unauthorized reproduction based on the same protection to which members of the Reich are also entitled according to law. The US citizens are, according to this, afforded copyright protection in Germany according German law.   The duration of the protection in Germany is also governed exclusively by German law; thus, it does not depend on whether and, as the case may be, how long the work in question is still protected in the USA (BGH - 1 ZR 49/13 -, decision of February 26, 2014 - Tarzan). When the stories were created in the 1940s (according to their publication, in the period between 1940 and 1944, without the exact point in time being important in this case), the applicable law was the law with respect to copyright to works of literature and music (LUG) of June 19, 1901, in the version of May 22, 1910, in conjunction with the law on the extension of protection periods of December 13, 1934. No. Sec. 29 sent. 1 LUG, copyright protection expired if, since the death of the author, thirty years had passed and, additionally, ten years had passed since the first publication of the work. This time limit was extended to fifty years in 1934. The copyright comes into being, according to German law, automatically upon creation of the work. According to this, the stories were, at the time of their creation, protected immediately and for 50 years, thus until the year 2060, whereby the time limit, No. Sec. 34 LUG is calculated according to the expiration of the year of death and not according to the date of death, i.e.: the protection applies up until the end of the year 2060. A further extension according Sections 64 para. 1, 129 para. 1 sent. 1 UrhG is not important for the decision.

The treaty of 1892 is superimposed by the Universal Copyright Convention (UCC). This entered into force for Germany and the USA on September 16, 1955. The treaty is applicable to the works which are the subject of the proceedings; since the works were protected upon the entering into effect of the treaty in Germany as the contracting member state, in which the protection is sought, compare Article VII UCC. It is immaterial whether the provisions of the UCC deviate from the provisions of the treaty of 1892 in the present case and lead to a shorter duration of protection, and whether the provisions of the UCC could therefore have priority according to Article XIX sent. 2 UCC. In any case, according to Article XIX sent. 3 UCC, those rights to a work which were acquired based on existing contracts or agreements in a state which is a member of this treaty before this treaty entered into effect for this state remain unaffected. This also includes the rights to a work that were acquired in Germany based on the treaty of 1892, before the UCC entered into effect for Germany. These rights remain in their originally existing form, part of this existing form is also the duration of the rights protection (BGH - 1 ZR 49/13 -, decision of February 26, 2014 - Tarzan). On September 16, 1955, the aforementioned copyright protection of the stories already existed. This protection is not affected by the UCC.

The Revised Berne Convention (RBC) is applicable in the relationship of the Federal Republic of Germany with the USA in its version which was revised on July 24, 1974 in Paris. It entered into effect for the Federal Republic of Germany on October 10, 1974, and for the USA on March 1, 1989. The UCC gives priority to the RBC and the RBC on its part gives priority to the treaty of 1892. According to Article 20 sent. 3 RBC, those provisions of existing treaties remain applicable which grant the creators rights that go above and beyond the rights granted to them through the RBC, or which contain other provisions that are not contrary to the RBC. These provisions include Article 1 of the treaty of 1892 (Federal Court of Justice - 1 ZR 49/13 "• decision of February 26, 2014 - Tarzan). The fact that in the view of the chamber the works also still enjoy copyright protection under the RBC is not relevant to the matter at hand; negating the necessity for further explanation at this point in time. It remains to be noted, that in Germany the works are still within the term of copyright protection.

ZP 550

12

The Applicants as the Trustees are entitled to claim the copyrights. Applicant is not the Trust but both Trustees. They are relying on rights in their own name. As far as in the letter of January 9, 2015 it is still stated the copyrights have been transferred to the Trust, the next letter, i.e. the cease and desist letter of February 5, 2015, clarified, that it was indeed the Trustees (Appendix K15). The Applicants have sufficiently shown and provided prima facie evidence in their statement of February 26, 2015 (III.) that the Trust is not a legal person but that the rights have been transferred to the Trustee who asserts the rights in his own name and not as a representative of the Trust. This follows from the insofar applicable law of the US state New Hampshire, especially 2A Corpus Juris Secundum Agency § 24 and § 564-B: 8-801 and 8-816 Common Law of Trusts (Appendices Ast 23 and Ast 24). The Applicants have provided prima facie evidence for these facts by the submission of the statement under oath of the local counsel Csatari of February 24, 2015 (Appendix Ast 25). The Defendant has not dealt with this substantive question more specifically For the transfer of right in this case, therefore, the following is relevant On July 24, 2008, J.D. Salinger founded the J.D. Salinger Literary Trust. In the preface of the founding document, J.D. Salinger as the Trustee declares that he has obtained all property referred to in the Attachment A from himself being the donator. In Article I it is stated, that further property may be transferred to the Trustees. Therefore, the rights shall not be transferred to the Trust itself but to the respective Trustee/Trustees.


This founding document only contains the transfer of certain singular property rights and exclusively provides for further transfer of property rights. The "annexed Schedule A" (submitted to the court as Appendix Ast 26) only contains the reference "see asset list" but does not contain any such list dated July 24, 2008. Therefore, it cannot be ascertained, whether the three stories in dispute have already been covered by this transfer.

However, this does not need to be determined. In any case, the Assignment Agreement of October 15, 2008 (Appendix Ast 4/28) shows that J.D. Salinger undertook an encompassing assignment of rights to the Trustee. This assignment also covers such copyrights which the assignor had not been aware of, for example according to foreign right in foreign countries. The assignment declaration is evidently designed for completeness. There is no point of reference for assuming that J.D. Salinger intended to exclude such works which, at the time of the assignment, had already fallen into the public domain

ZP 550

13

in the US. As already explained, copyright protection of such works in foreign countries was still possible. Furthermore, there is no other reason noticeable, why these works should be withheld from the Trust. It is undisputed, that the Applicants are the incumbent trustees. Therefore, they are entitled to assume a copyright in and to the stories in their own names as the Trustees.

The application under 1. seeking an injunction is justified according Sections 97 para. 1 sent. 1, 23 sent. 1, 15 para. 1 No. 1 and 2 and para. 2 sent. 2 No. 2, 16 para. 1, 17 Abs. 1 and 19·a UrhG.

The German translation of the stories is an adaptation within the meaning of Sec. 23 sent. 1 UrhG. The publication and exploitation of this adaptation pre-supposes the consent of the author, in this case the Applicant.  The Defendant has reproduced (Sec.·16 (1) German Copyright Law), disseminated (Sec. 17 (1) German Copyright Law, printed version) and made publicly available (Sec. 19 a German Copyright Law, E Saak) the edited work in the form described under 'in particular', without excluding the possibility of other manners of exploitation. It is not necessary in this case that there are any further indications to suggest that other forms of exploitation will follow. It is not uncommon that following initial publication of a printed book, additional forms such as paperback or licensed versions are released at a later date. The Defendant has provided no indications in this instance that rule out such practices in the future.

The Defendant acted unlawfully. The consent of the author or the Applicants has not been given to the Defendant. The license by the publisher Default-Graves Agency might relate to potential rights with regard to the new American edition of the book as such, but it cannot invalidate the rights of the Applicants in the present case.

The claim is given regardless of any culpability. In the court's opinion, the Defendant has acted negligently in any case. The responsibility rested on the Defendant, to exhaustively assure itself – prior to the adaptation, publication and exploitation – with regard to its entitlement. This is all the more, as it's

14

own German lawyers in their protective writ regard the legal matter as being too complex for a speedy trial, thus as particularly difficult. In such situation, the Defendant has limited itself – as far as it follows from its own statements – to trusting in a declaration of its licensor. The Defendant has left open, what could have entitled it to assume that the US American publisher could have trustworthily assessed and reliably clarified the complex copyright situation in Germany. In the end, however, this is not relevant to this decision.

Therefore, the application number 1 in its final version and related to Germany is therefore justified, Article 97 para. 1 German Copyright Law.

The omission obligation was not to be limited to the books already printed and produced. Any such limitation would factually run empty the speedy trial and deny the right to effective protection of rights of the Applicants. Moreover, the Defendant does not deserve such protection as follows from the statements on the Defendant's culpability and on Sec. 98 para. 4 German Copyright Law.

Further, the original application No. 1. contained the petition to prohibit advertising (by the Defendant or others). The complainants no longer pursue this objective. They have therefore withdrawn parts of their application No. 1.

The original application No. 1. contained in its heading the active exploitation forms of publication and exploitation. Here, the complainants  made reference to the terms stated in Sec. 23 sentence 1 German Copyright Law and, following instruction by the court that the forms of exploitation must be specified in the Application according to Sec. 15 ff. German Copyright Law, clarified their petition to the court in a manner that corresponds with the reasoning for the Application. However, there is no indication in the reasoning of the Application that by using the general term of exploitation, the Applicants sought to initiate the prohibition of certain additional, or even all conceivable, forms of exploitation. Hence, this shall be considered merely a clarification and not a partial withdrawal of the Application.

Originally, the complainants sought in their application No. 1. to be granted protection for the countries Germany, Austria and Switzerland, and did thereafter seek protection for Germany only. It was necessary that this be expressed in the wording, Sec. 308 (1) sentence 1 Code of Civil Procedure. The Applicants have withdrawn their application in respect to protection in Austria and Switzerland.

Finally, the complainants also sought to secure prohibition of the publication of the book in their application No. 1. They amended this application in the version of their new application No. 2 following publication of the book.

The complainants have withdrawn the section of the application in the new application No. 2, so that a decision in this respect is now unnecessary.

The application No. 3. (originally the application No. 2.) has been withdrawn by the complainants in respect to the second section (offerings for download).

The application No. 3 is also to be granted with regard to the first part of printed copies of the book, Sec. 98 para. 2 case 1 German Copyright Law. According to that, the copyright holder may claim that the infringer of the copyright or of any right protected under this law (as ascertained here), must recall any copies which have been unlawfully produced or distributed or were deemed to be distributed unlawfully.

This claim exists only insofar as the infringer has the factual or legal possibility to influence the recall. Recall means that the infringer approaches its customers and retailers of further levels and requests them to return the infringing copies against reimbursement of the purchase price. Whether the recall is successful or not is not within the power of the recalling person; success of the recall can therefore not be owed (Dreier in Dreier/Schulze, UrhG, 4. Edition 2013, Sec. 98, para. 17). The Defendant cannot exonerate itself by arguing that it had transferred the property rights with regard to the distributed books to its customers already. Even if

the Defendant may not have a legally enforceable right to have the books returned; the Applicant's claim is not directed toward something impossible. The Defendant is factually still in the position to strongly urge its customers by referring to the per curiam imposed obligation to return the books against reimbursement of the purchase price. It is far from being out of question, that thereby at least a part of the infringing copies can be recalled, especially because the addressed retailers have to consider their own risk of legal liability if they continue distributing the infringing copies (see also Wandtke/Bullinger/Bohne, UrhR, 4. Edition 2015, Sec. 98, para. 38 – 39).

The complainants do not ask for more in this respect, as shown in their procedural document dated 2 March 2015. In particular, this document does not stipulate that the complainants are seeking to obligate the Defendant to the success of a recall aside from the active, serious efforts to ensue a recall. A recall of this nature does not pre-empt the principal decision in this matter in an inadmissible form. Rather, it would in fact still be possible for the Defendant to resume sales of the books at a later date if applicable. Therefore, the enforcement of the recall claim is not restricted to the main dispute. Unlike in the differentiation of a request for information according to Sec. 100 (7) German Copyright Law, the law does not explicitly exclude claim in the interim proceedings according to Sec. 98 (2) German Copyright Law. Sec. 98 (2) German Copyright Law notwithstanding, the recall obligation is on all accounts an integral element of the cease and desist order, which is not exhaustively satisfied merely by remaining inactive, and instead requires the rectification of a state that had by prior actions been brought into existence (cf. KG - 5 W 253/10 -, ruling dated 2 November 2010 in respect to the German Law on Unfair Competition). Hence, the provision of effective legal protection necessitates the application of Sec. 98 (2) German Copyright Law in the protection afforded in interim proceedings.

There are no reasons to assume, that the obligation to such recall would be disproportionate in the sense of Sec. 98, para. 4 Copyright Law. The Defendant did not blunder into the situation without any culpability as already stated; rather, the Defendant is the acting part. The Defendant may not reproach the Applicants, claiming that they had promoted the damage due to any hesitant behavior or that the Applicants intended to damage the Defendant. The Defendant could have already learned from the letter of January 9, 2015

that no consent would be granted. The Defendant has not indicated at which point of time the first edition of the book was printed and produced, i.e., if any earlier approach by the Applicants could have achieved anything at all. If the Defendant had had any interest in an earlier clearance of rights and of the risk with the Applicants, the Defendant itself could have approached the Applicants instead of relying on a declaration by the licensor and leave it to the Applicants to discover the publication in Germany themselves. At least since the letter of January 9, 2015, the Defendant could have suspended publication or at least the distribution to the retailers temporarily in order to avoid the situation which has now occurred, especially as no relation of the book to any current events can be seen which could have justified such hurry.

The reason for an interim injunction according to Secs. 935, 940 Civil Procedure Act (ZPO) is also given. Initially, the Applicants aimed at the avoidance of the imminent publication of the book. Now, they want to minimize the consequences of the publication. Both demands are urgent and are not be referred a main proceeding.

There is no behavior of the Applicants which disconfirms this urgency. In the district of the higher regional court of Berlin; a general urgency period of two months after becoming aware of the circumstances that are relevant to an application for interim injunction applies. For reasons of legal security, only in very extreme circumstances of the individual case is allowed to deviate from this period (see Higher Regional Court, 5 W 295/10 – Decision of December 14, 2010). Such exceptional case is not given here.

The Applicants have provided sufficient prima facie evidence, that they themselves only became aware of the fact that the Defendant announced to publish the book on December 22, 2014. Due to their previous communication with the American publisher, the Applicants were justified to believe that at least as regarding Europe it had not granted licenses and the Applicants had no duty to actively observe the worldwide market. The period for the urgency requirement therefore started on December 22, 2014. It does not have to be determined, whether the local counsel of the Applicants had

knowledge on December 18, 2014 already and whether this knowledge has to be attributed to the Applicants without further assessment, because even if December 18, 2014 was the starting point of the urgency period, this would not change anything. There is no reason to exceptionally shorten the two month period. It has to be considered in favor of the Applicants, that they are American petitioners, so that there is a greater need for translation, assessment and correspondence than for example in the case of a German right holder.  The Trust did not issue a request for proof of entitlement until 9 January 2015, whereupon, following the response on 16 January 2015, the complainants allowed a further three weeks to pass before serving formal notice. Nevertheless, based on the letter dated 9 January 2015, the Defendant must have been aware that from the side of the author there was unlikely to be approval for the publication of the book. A suitable period of review and coordination must be afforded to the Applicants in view of the complex legal questions, also with respect to the imminent publication of the book, which at the time was not scheduled until 9 March 2015. The Defendant must have expected legal difficulties from 9 January 2015, and it was at its own risk that it continued to pursue, or indeed force, publication unchanged. The application was received on 6 February 2015 and hence, even if the limitation period were to commence on 18 December 2015, was received within the two-month limitation period. Thus, urgency must be granted.

The decision on the costs is based on Sec. 92, para. 1, sentence 1, case 1 and sentence 2 Civil Procedure Act (ZPO). Thereby, it was to be considered that the Applicants intended to prohibit the publication and distribution of the book in three countries. The change in the application from the omission of the publication to the undoing of the publication was motivated by the intention to take back any books which are out now, i.e., which would be more than just a recall from the retailers and a minus to the omission of the publication, as the representing counsel of the Applicants explained in the oral hearing. The Applicants have withdrawn this application regarding the publication, respectively the undoing of it. This also relates to the prohibition of advertising the books, which was of minor impact with regard

ZP 550

19

to the other exploitation actions. The Applicants have withdrawn their applications regarding the countries of Austria and Switzerland, as well as their application number 3 regarding the offers for a download. The Applicants have adjudicated a greater interest to this than the pure omission.

In the court's opinion, this interest however is factually rather small, because the overarching aim can be reached in principle by the obligation to omit the distribution. Considering the number of the population in the three countries concerned (Germany around 80 million, Austria and Switzerland in each case around 8 million) and transferring this relation to the scope of potential requests for the books, and considering that the Applicants have reached their aims of the granted duties to omit and to recall in Germany at the point in time of the decision, each of the shares are in general balanced. Therefore the costs were to be shared.

In respect to the cease and desist obligations, the punishments defined under law according to Sec. 890 (1) '1 German Code of Civil Procedure were to be enforced threatened in accordance with the complainants'petition. The enforcement by writ of the recall obligation is based on Sec. 888 (1) German Code of Civil Procedure; a threat of coercive powers does not apply, Sec. 888 (2) German Code of Civil Procedure

The documents submitted by the Defendant dated 12 and 23 March 2015 were not recognized by the court. Neither did they contain any information that was relative to this case, nor did they justify any further action. They merely deliberated on general legal questions.

Meyer-Schäfer                          Schaber                          Raddatz

**Issued**
Berlin, 07.04.20



Hirsch
Justice
Employee